# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No.: 14-34232 |
| CONCEPTS AMERICA, INC. | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor. | ) | |
| | ) | Chapter 7 |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **Tuesday, September 1, 2015 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we will appear before the Honorable Pamela S. Hollis, or any judge sitting in her stead, in Room 644 of the United States Courthouse 219 S. Dearborn Street, Chicago, Illinois 60604, and then and there present *Trustee's Motion to (A) Employ Goldstein & McClintock LLLP as Special Litigation Counsel and (B) Approve Post-Petition Financing to Fund Litigation Expenses*, a copy of which is hereby served upon you.

Dated:  August 17, 2015

Respectfully submitted,

**BRIAN AUDETTE, CHAPTER 7 TRUSTEE**

By:     /s/ Matthew E. McClintock

Matthew E. McClintock, Esq.
Thomas R. Fawkes, Esq.
Daniel Curth, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
Telephone: (312) 337-7700
Facsimile: (312) 277-2305
e-mail: mattm@restructuringshop.com

*Proposed Counsel to the Trustee*

4811-0890-0646

## CERTIFICATE OF SERVICE

I, Matthew E. McClintock, the undersigned attorney, hereby certify that on August 17, 2015, I caused a copy of the ***Trustee's Motion to (A) Employ Goldstein & McClintock LLLP as Special Litigation Counsel and (B) Approve Post-Petition Financing to Fund Litigation Expenses*** to be served upon the following parties as indicated below.

/s/ Matthew E. McClintock

Matthew E. McClintock, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
Telephone: (312) 337-7700
Facsimile: (312) 277-2305
e-mail: mattm@restructuringshop.com

**VIA CM/ECF**

Brian Audette
baudette@perkinscoie.com, IL32@ecfcbis.com

Zoran Balac on behalf of Petitioning Creditor Lincoln ASB Colorado Center, LLC
zoranb@restructuringshop.com

Ryan W Blackney on behalf of Petitioning Creditor CJUF III McCaffery Roosevelt Retail, LLC
rblackney@freebornpeters.com

Thomas R. Fawkes on behalf of Petitioning Creditor CJUF III McCaffery Roosevelt Retail, LLC
tomf@restructuringshop.com

Richard H Fimoff on behalf of Alleged Debtor Concepts America, Inc.
rfimoff@rsplaw.com, fb@rsplaw.com

Douglas C. Giese on behalf of Petitioning Creditor Galleria Mall Investors LP
dgiese@querrey.com, dcgiese@hotmail.com

Karen Hart on behalf of Petitioning Creditor Galleria Mall Investors LP
khart@bellnunnally.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Matthew E. McClintock on behalf of Petitioning Creditor Lincoln ASB Colorado Center, LLC
mattm@restructuringshop.com,
teresag@restructuringshop.com;seanw@restructuringshop.com;harleyg@restructuringshop.com

Lartease Tiffith on behalf of Petitioning Creditor Lincoln ASB Colorado Center, LLC
larteaset@goldmclaw.com, seanw@restructuringshop.com;teresag@restructuringshop.com

## VIA FIRST CLASS U.S. MAIL

Concepts America, Inc.
1840 Pickwick Avenue
Glenview, IL 60026

Roger Greenfield
1840 Pickwick Avenue
Glenview, IL 60026

American Fund US
Investment LP
P.O. Box 10064
Uniondale, NY 11555

33 Restaurant, Inc.
1840 Pickwick Lane
Glenview, IL 60026

33 Restaurant, Inc.,
1840 Pickwick Lane
Glenview, IL 60026-1307
701 America, Inc.
1840 Pickwick Lane
Glenview, IL 60026-1307

American Express Bank
FSB
c/o Becket and Lee LLP
POB 3001Malvern PA
19355-0701

American Fund US
Investment LP
P.O. Box 10064
Uniondale, NY 11555-
0001

Angelini & Angelini
650 N. Dearborn, Suite
700
Chicago, IL 60654-3872

Ashleigh Shelver
9700 Dr. Martin Luther
King Jr
Suite 400
Saint Petersburg, FL
33702-2475

BRE Throne Shops c/o
Regency Realty Group Inc.
One Independent Dr., Ste.
114
Jacksonville, FL 32202-
5005

Buck Keenan LLP
700 Louisiana, Suite 5100
Houston, TX 77002-2766

Chica Loca LLC
1840 Pickwick Lane
Glenview, IL 60026-1307

Chris Bhatti c/o Vincent
and Ditty Bhatti
14785 Preston Road
Suite 550
Dallas, TX 75254-7899

Dorsey & Whitney, LLP
50 S. 6th Street, Suite 1500
Minneapolis, MN 55402-
1553

Eden at Landcaster, LLC
1355 Beverly Road Suite
240
McLean, VA 22101-3649

Galleria Mall Investors LP
2515 McKinney Ave Suite
800
Dallas, TX 75201-1980

Halpren Law Firm
10 South Fifth Street Suite
4
Minneapolis, MN 55402-
1001

Hi Line Restaurant, LLC
1840 Pickwick Lane
Glenview, IL 60026-1307

Highland Tavern Dallas,
LLC
1840 Pickwick Lane
Glenview, IL 60026-1307

Hunton & Williams LLP
1445 Ross Ave., Suite
3700
Dallas, TX 75202-2755

James X. Bormes
8 South Michigan Avenue
Suite 2600
Chicago, IL 60603-3328

Jason T. Philander
2710 Oxford Dr. W
Bradenton, FL 34205-2959

Joseph Fors c/o James X.
Bormes
8 South Michigan Avenue
Suite 2600
Chicago, IL 60603-3328

Klein, Dub and Holleb,
Ltd.
660 LaSalle Place, Suite
100
Highland Park, IL 60035-
3575

Long Bar LLC
1840 Pickwick Lane
Glenview, IL 60026-1307

Lower Oak Lawn
Investment LP c/o PM
Realty Group
1000 Main St., Suite 2400
Houston, TX 77002-6359

Michael Browning
1840 Pickwick Lane
Glenview, IL 60026-1307

Midtown Kitchen Bar, Inc.
1840 Pickwick Lane
Glenview, IL 60026-1307

Nova Casulty Company
726 Exchange Street Suite
1020
Buffalo, NY 14210-1466

Prime Bar Greenway, LLC
1840 Pickwick Lane
Glenview, IL 60026-1307

Prime Bar Minneapolis
LLC
1840 Pickwick Lane
Glenview, IL 60026-1307

RDG Chicago, Inc.
1840 Pickwick Lane
Glenview, IL 60026-1307

Restaurants-America
Consulting
1840 Pickwick Lane
Glenview, IL 60026-1307

Restaurants-America
Trademark
1840 Pickwick Lane
Glenview, IL 60026-1307

Roger Greenfield
1840 Pickwick Lane
Glenview, IL 60026-1307

Roger J. Sullivan
1 Vale Road, Suite 200
Bel Air, MD 21014-2371

Ted Kasemir
1840 Pickwick Lane
Glenview, IL 60026-1307

Townhouse Baltimore
LLC
1840 Pickwick Lane
Glenview, IL 60026-1307

Townhouse DG LLC
1840 Pickwick Lane
Glenview, IL 60026-1307

Vincent and Ditty Bhatti
14785 Preston Road Suite
550
Dallas, TX 75254-7899

Vinson & Elkins LLP
2001 Ross Avenue Suite
3700
Dallas, TX 75201-2975

WC 3rd and Trinity, LP
401 Congress Avenue
33rd FloorAustin, TX
78701-3792

Wild Cat Mockingbird
1840 Pickwick Lane
Glenview, IL 60026-1307

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No.: 14-34232 |
| CONCEPTS AMERICA, INC., | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor. | ) | |
| | ) | Chapter 7 |

**TRUSTEE'S MOTION TO (A) EMPLOY GOLDSTEIN & MCCLINTOCK LLLP AS
SPECIAL LITIGATION COUNSEL AND (B) APPROVE POST-PETITION
FINANCING TO FUND LITIGATION EXPENSES**

Now comes Brian Audette, the chapter 7 trustee (the "*Trustee*") appointed in the above-captioned case, pursuant to 11 U.S.C. §§ 327(a), 328(a), 329(a), 364(c), and 364(d)(1) and Rules 2014(a) and 4001(c) of the Federal Rules of Bankruptcy Procedure, and for his Motion to Employ Goldstein & McClintock LLLP ("*G&M*") as Special Counsel and to Approve Post-Petition Financing to Fund Litigation Expenses, states as follows:

**INTRODUCTION**

1.      The Trustee seeks to employ G&M as counsel to investigate and pursue claims relating to the pre-bankruptcy conduct of Concepts America, Inc. ("*Concepts*" or the "*Debtor*") including, without limitation, claims relating to pre-bankruptcy transfers of assets and claims against related entities and/or individuals (whether allegedly alter-egos of Concepts America or otherwise) (the foregoing being broadly defined as the "*Special Counsel Engagement*").

2.      G&M is well suited to the Engagement because G&M has spent well over a year investigating similar issues on behalf of Lincoln ASB Colorado Center, LLC ("*LCC*"), a creditor of the Debtor and one of the petitioning creditors in the Debtor's bankruptcy case.  Accordingly,

although substantially more discovery is needed, G&M is well-positioned to represent the estate in connection with the Special Counsel Engagement and, in fact, as a direct result of its efforts to date and familiarity with the case and issues, is willing to take on the Special Counsel Engagement on a contingency basis.

3.     Although the Estate will thus not be liable for any fees incurred by G&M under the present retention terms, to ensure that the claims can be investigated and pursued for the benefit of the estate, the Trustee requires the ability to (a) reimburse G&M for its reasonable expenses incurred in connection with the Special Counsel Engagement and (b) pay expenses associated with any litigation that may be commenced in connection therewith.  To accomplish the foregoing, the Trustee seeks entry of an order (x) authorizing the estate to borrow funds from one or more of the Debtor's largest creditors (the "*Contributing Creditors*") and (y) approving limited adequate protection to induce the Contributing Creditors to make the necessary advances.

## RELEVANT FACTS

4.     On September 19, 2014 (the "*Petition Date*"), an involuntary chapter 7 petition was filed on behalf of the Debtor.  The Debtor consented to the petition on November 18, 2015, and the Trustee was appointed on January 27, 2015.

5.     Based on limited discovery obtained to date, it appears that the Debtor was, until some months before the Petition Date, the head of a restaurant group that includes a number of successful and well-known restaurants – such as Grill Room, One North, Prime Bar, Park Tavern Townhouse, Bluepoint and Red Star, among others, with each concept typically having multiple locations in multiple cities across the country.

6.      Millions of dollars in receipts from the associated restaurants flowed into the Debtor's bank accounts on a monthly basis, and the principals of the Debtor used the funds to pay the associated expenses of the various restaurants as well as pay themselves.  When new restaurants were opened, the Debtor's principals had the Debtor guaranty the leases, issuing financial statements that showed the Debtor owning numerous  profitable restaurants.

7.      As defaults mounted, however, and creditors began to obtain judgments against the Debtor, things changed.  First, overnight, the deposits that had been flowing into the Debtor's bank accounts completely disappeared – presumably now routed to a new entity unknown to the Debtor's creditors.  Second, Concepts now claims that it did not in fact own the vast majority of the restaurants it had previously held itself out as owning.   Hence, when creditors obtained judgments against what they understood to be a financially solid guarantor, they found they were suddenly pursuing a shell company with presumably little to no assets.  The involuntary bankruptcy followed, and according to the Debtor's schedules, the Debtor has $0 in assets and well over $12 million in liabilities.

8.      More troubling, there appears to be a pattern here.  Restaurant Development Group, Inc. ("*RDG*") was, as a practical matter, the Debtor's predecessor – an entity with the same basic ownership structure (*i.e.*, basically Roger Greenfield and Ted Kasemir) and that was the "face" of the restaurant group.  As here, RDG guaranteed the leases for various restaurants, racked up huge debts when leases went into default, and then allegedly transferred assets to avoid creditor claims.   Although it appeared that RDG was once profitable and had assets sufficient to pay all or at least some of the lease guarantees, RDG allegedly transferred substantially all of its assets out of reach of its creditors.  RDG, like Concepts America, ended up

in a chapter 7 bankruptcy proceeding, and following litigation commenced in 2007 by the Chapter 7 Trustee, the principals of RDG along with RDG's accountant and attorneys settled the litigation for approximately $8,400,000. *See In re Restaurant Development Group, Inc.*, Case No. 07-00592 (Bankr. N.D. Ill.) [Docket No. 347].

9.      To a significant degree, history appears to have repeated itself, with the same restaurant ownership group apparently moving assets away from the Debtor, through and into the hands of other entities and other individuals, apparently to avoid the reach of Debtor's numerous creditors. Although limited post-judgment discovery conducted by individual creditors has already raised significant concerns about the transactions that led to the bankruptcy, substantial additional discovery, and a central investigation, is needed. Creditors need a full picture of what occurred pre-petition. And if that investigations reveals causes of action that can be pursued for the benefit of the creditors who at this point are looking at no recovery on over $12 million in claims – those claims need to be pursued expeditiously.

## REQUEST TO EMPLOY G&M

10.      For multiple reasons, the Trustee believes that it is in the best interests of the Debtor's estate that G&M be retained to pursue the Special Counsel Engagement.

11.      *First,* for more than a year prior to the Petition Date, G&M had been working to collect on LCC's judgments against the Debtor. Through this process, including obtaining bank records through third party subpoenas, G&M came to realize that the cash that had been flowing through the Debtor's accounts had been transferred out, and generally gained a familiarity with the Debtor's pre-bankruptcy conduct. G&M was instrumental in coordinating creditors and initiating the involuntary bankruptcy, and in fact G&M now employs the litigator – Dan Curth –

who separately obtained a judgment against the Debtor on behalf of CJUF III McCaffery Roosevelt Retail, LLC – one of the other petitioning creditors.  In other words, G&M has a substantial knowledge base, and is well situated to continue these efforts.

12.     ***Second,*** G&M has a substantial corporate bankruptcy practice, and its professionals are familiar with both discovery and litigation in the bankruptcy context.  Again, there will be no need to "get up to speed."

13.     ***Third,*** due to the fact that it is already well into the collection process, and has a substantial understanding of the facts, G&M is willing to take this case on a contingency basis – something that, obviously, will be a significant benefit to an estate that allegedly has no assets.

14.     ***Fourth,*** G&M will provide the estate with high-quality representation.   The primary attorney on this matter, and the one expected to do most of the work on it going forward is Dan Curth, a partner in G&M's litigation department.   Mr. Curth is an experienced and talented litigator who spent years in the litigation department of Freeborn & Peters LLP before becoming a partner at G&M, and as noted, Mr. Curth was involved in the case even prior to joining G&M.  In addition to G&M's bankruptcy team, Mr. Curth will be working with Lartease Tiffith – another G&M litigation partner who has taken numerous depositions, poured over documents, and already has substantial factual background.

15.     In light of the foregoing, the Trustee believes that retaining G&M to represent the estate in connection with the Special Counsel Engagement is the best and most efficient way to maximize the estate's value and obtain a meaningful recovery for creditors.

## G&M'S COMPENSATION

16.     G&M has agreed to take the Special Counsel Engagement on a contingent fee basis.  Specifically, G&M will receive 35% of the gross value recovered in connection with its Special Counsel Engagement (the "*G&M Contingency Fee*"), payable as an administrative expense claim in the bankruptcy.  (*See* G&M Engagement Letter attached hereto as <u>Exhibit A</u>).  Aside from the contingency fee, the estate will only be liable for G&M's reasonable out of pocket expenses (subject to Court approval of same), and any other expenses that may be associated with litigation that the Trustee decides to have G&M pursue.

## G&M'S RETENTION IS APPROPRIATE UNDER 11 U.S.C. § 327(a)

17.     Under Section 327(a) of the Bankruptcy Code, a trustee can employ a lawyer as counsel if that lawyer is "disinterested" and does not hold or represent an "interest adverse to the estate." 11 U.S.C §327(a).

18.     These two requirements blend together in that the Bankruptcy Code defines a "disinterested person" as one who "does not have an interest materially adverse to the interest of the estate." 11 U.S.C. §101.  So in practical terms, to meet both requirements, one only needs to show that the proposed counsel does not have an "interest adverse to the estate."  *See In re Howell*, 148 B.R. 269, 271 (Bankr. S.D. Tex. 1992) ("These two criteria significantly overlap because 'disinterested person,' as defined in [the Bankruptcy Code], includes a person who does not have an interest materially adverse to the estate."); *See also In re Kobra Properties*, 406 B.R. 396, 402 (Bankr. E.D. Cal. 2009).

19.     Courts have defined an "adverse interest" as "an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential

dispute in which the estate is a rival claimant, or; ... a predisposition under circumstances that render such a bias against the estate." *In re Midway Motor Sales*, 355 B.R. 26, 33 (Bankr. N.D. Ohio 2006) (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985) (Affirmed in relevant parts, reversed in part on other grounds)).[1]

20.     Importantly, the proposed counsel only needs to be free of an adverse interest in relation to the "services which are to be performed by that attorney." *In re Peters Contracting*, 301 B.R. 857, 860-861 (Bankr. M.D. Tenn. 2003); *In re Best Craft General Contractor*, 239 B.R. 462, 467-468 (Bankr. E.D.N.Y. 1999); *In re Midway Motor Sales*, 355 B.R. at 35.  In other words, attorneys who are adverse to the estate on certain issues in a bankruptcy still qualify for appointment as counsel if they are not retained to handle those issues.  *See Id.* (approving attorney as special counsel in an adversary matter where the attorney represented a secured creditor but the secured creditor's interests were not adverse to the estate on that adversary matter).[2]

21.     Representing a creditor does not bar an attorney from appointment as counsel.  11 U.S.C. §327(c) (Stating that a proposed counsel cannot be disqualified "solely because of such person's employment by or representation of a creditor, unless there is…an actual conflict of interest."); *See also In re Best Craft General Contractor*, 239 B.R. at 467 n. 5.

22.     As it relates to the Special Counsel Engagement, G&M meets the test for employment under §327(a).  First, G&M does not hold an adverse interest because its services

---

[1]     The Bankruptcy Code does not define "adverse interests."  *In re Hanckel*, 517 B.R. 609, 613 (Bankr. D.S.C. 2014).

[2]     This requirement comes from § 327(e), which, based on its terminology, only applies to attorneys who have previously represented the debtor.  11 U.S.C. § 327(e).  But courts have "reason[ed] by analogy" that it also applies to attorneys who have represented and currently represent creditors.  *In re Peters Contracting*, 301 B.R. at 860-861; *In re Best Craft General Contractor*, 239 B.R. at 468; *In re Midway Motor Sales*, 355 B.R. at 35.

almost by definition cannot lessen the value of the estate.  Indeed, if G&M identifies assets that can be recovered and brings value into the estate, that would benefit all creditors – remember, the Debtor currently purports to have no assets at all.  As such, G&M's efforts can only *increase* the value of the estate.

23.     Second, although G&M does represent LCC and Mr. Curth represented McCaffery prior to joining G&M, both LCC and McCaffery share the same basic interest as the Trustee – bringing money into the estate.  And to the extent that LCC's interest might not be aligned with those of the Trustee on some other hypothetical issue, G&M will not be representing the Trustee in connection with any such hypothetical (and currently unforeseen) dispute – G&M is only being retained in connection with the Special Counsel Engagement.

24.     Therefore, G&M is disinterested and not adverse to the estate with respect to the Special Counsel Engagement.  *See* McClintock Declaration attached hereto as <u>Exhibit B</u>.  As such, G&M qualifies for employment under §327(a).

## <u>EFFECTIVE DATE OF RETENTION</u>

25.     The Trustee requests that G&M's retention be approved retroactively to July 24, 2015, the date the Trustee approved G&M's Engagement Letter.  "The Seventh Circuit is one of those courts which has held that under proper circumstances, the 'equitable aspects of bankruptcy proceedings permit the court to retroactively approve the employment' of professionals who rendered services for a debtor even absent strict compliance with § 327." *Gowan v. Lefkas Gen. Partners No. 1017 (In re Lefkas Gen. Partners No. 1017)*, 153 B.R. 804, 808 (N.D. Ill. 1993) (citations omitted).  Here, in light of the immediate need for G&M to assist the Trustee with a variety of issues and the need to prepare the instant application and associated

documents, the short period of time for which retroactive approval is sought is both reasonable and appropriate.

## THE LITIGATION FUNDING SHOULD BE APPROVED

26.    The Trustee believes that several of the Debtor's creditors will be willing to advance funds to the Trustee sufficient to allow the estate to (a) reimburse G&M for out of pocket expenses incurred in connection with the Special Counsel Engagement and (b) to the extent litigation is pursued, fund the costs associated therewith, such as expert fees (the "*Litigation Funding*").

27.    The Contributing Creditors will not charge interest or fees in connection with amounts advanced as part of the Litigation Funding.  Rather, they merely seek to be reimbursed on a priority basis for all amounts advanced, and to ensure such reimbursement, seek the following adequate protection:

28.    All amounts advanced as part of the Litigation Funding should be automatically treated as superpriority administrative expense obligations of the Debtor's bankruptcy estate (the "*Superpriority Claim*") pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carveout (as defined below).  Section 364(c)(1) provides as follows:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503 (b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503 (b) or 507 (b) of this title

11 U.S.C. §364(c)(1).  Given the uncertainty inherent in litigation, as well as the condition of the Debtor's estate, it is impossible to imagine that a lender would advance funds on an

unsecured/administrative expense basis, let alone on favorable terms such as those being offered by the Contributing Creditors.  The Trustee thus believes that granting the Superpriority Claim for all amounts advanced is appropriate under the circumstances.

29.     The Contributing Creditors should also be granted first priority security interests in and liens upon (the "*Contributing Creditors Liens*"; and together with the Superpriority Claim, the "*Contributing Creditors Adequate Protection*") all assets of the estate, subject only to a carveout (the "*Carveout*") for (a) U.S. Trustee fees that may be payable; (b) fees payable to the Chapter 7 Trustee; and (c) the G&M Contingency Fee.  Although the Debtor does not have any known secured creditors, so the requested liens can be approved pursuant to sections 364(c)(2) and (3) – out of an abundance of caution the Trustee seeks to have the Contributing Creditors Liens approved pursuant to section 364(d) of the Bankruptcy Code (to provide comfort to the Contributing Creditors that their liens will have priority over any currently unknown liens).  The Trustee believes that granting the Contributing Creditors Liens is fully appropriate under the circumstances given that (a) the Trustee has no other means of obtaining the Litigation Funding on more favorable terms and (b) the Contributing Creditors will be making the advances in the hopes of enhancing the value of the estate for all creditors.

30.     Given the relief requested, the Trustee has not filed a copy of the credit agreement in accordance with Bankruptcy Rule 4001(c)(1)(A), as a credit agreement does not exist for the contemplated transaction.  Pursuant to Bankruptcy Rule 4001(c), the Trustee makes the following disclosures:

    a.  Under Bankruptcy Rule 4001(c)(1)(B)(i), the Litigation Funding grants priority or a lien on property of the estate under § 364(d) of the Bankruptcy Code.

b.  Under Bankruptcy Rule 4001(c)(1)(B)(ii), the Litigation Funding does not provide for adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 of the Bankruptcy Code to make cash payments on account of the claim.

c.  Under Bankruptcy Rule 4001(c)(1)(B)(iii), the Litigation Funding does not determine the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim through stipulations of the Debtor that are binding on creditors for a defined period of time.

d.  Under Bankruptcy Rule 4001(c)(1)(B)(iv), the Litigation Funding does not provide a waiver or modification of Code provisions or applicable rules relating to the automatic stay.

e.  Under Bankruptcy Rule 4001(c)(1)(B)(v), the Litigation Funding does not provide a waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364.

f.  Under Bankruptcy Rule 4001(c)(1)(B)(vi), the Litigation Funding does not establish deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order.

g.  Under Bankruptcy Rule 4001(c)(1)(B)(vii) the Litigation Funding does not provide a waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien.

h.  Under Bankruptcy Rule 4001(c)(1)(B)(viii) the Litigation Funding does provide a release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action.

i.  Under Bankruptcy Rule 4001(c)(1)(B)(ix) the Litigation Funding does not provide for the indemnification of any secured lenders.

j.  Under Bankruptcy Rule 4001(c)(1)(B)(x) the Litigation Funding does not include a release, waiver, or limitation of any right under § 506(c) of the Bankruptcy Code.

k.  Under Bankruptcy Rule 4001(c)(1)(B)(xi) the Litigation Funding does provide the granting of a lien on claims and causes of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) of the Bankruptcy Code.  Although there are no known preferences in the case – *i.e.*, claims under § 547 of the Bankruptcy Code based on the Debtor's disclosures – the point of the Litigation Funding is to investigate whether other claims exist that might reveal causes of action that can be pursued for the benefit of creditors.  If such causes of action are revealed and successfully pursued based, in part, on the Litigation Funding, it is appropriate that the Contributing Creditors be repaid on a priority basis from the proceeds.

31.    None of the disclosures required by Rule 4001-2 of the Local Rules are implicated by the Litigation Funding.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, Brian Audette, the Chapter 7 Trustee appointed in the above-captioned case, respectfully requests that this Court enter an order (a) approving the Trustee's retention of G&M to pursue the Special Counsel Engagement effective as of July 24, 2015; (b) approving the Litigation Funding and authorizing the Trustee to borrow funds from the Contributing Creditors to the extent needed to pay expenses associated with the Special Counsel Engagement and litigation that may be initiated thereunder; (c) approving the Contributing Creditors Adequate Protection; and (d) providing such further relief that this Court deems necessary and proper.

Respectfully submitted,

**BRIAN AUDETTE, CHAPTER 7 TRUSTEE**

By:____/s/  Matthew E. McClintock_____

Matthew E. McClintock, Esq.
Thomas R. Fawkes, Esq.
Daniel Curth, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
Telephone: (312) 337-7700
Facsimile: (312) 277-2305
e-mail: mattm@restructuringshop.com

*Proposed Counsel to the Trustee*