**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 14-34232 |
| CONCEPTS AMERICA, INC. ) | |
| ) | Honorable Pamela S. Hollis |
| Debtor. ) | |
| ) | Chapter 7 |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on **Thursday, September 29, 2016 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we will appear before the Honorable Pamela S. Hollis, or any judge sitting in her stead, in Room 644 of the United States Courthouse 219 S. Dearborn Street, Chicago, Illinois 60604, and then and there present the *Motion to Extend Time Limit for 2004 Examinations of Roger Greenfield and Ted Kasemir*, a copy of which is hereby served upon you.

Dated: September 22, 2016

Respectfully submitted,

**BRIAN AUDETTE, CHAPTER 7 TRUSTEE**

By:   /s/ Matthew E. McClintock

Matthew E. McClintock, Esq.
Daniel Curth, Esq.
Sean P. Williams, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
Telephone: (312) 337-7700
Facsimile: (312) 277-2305
e-mail: mattm@restructuringshop.com

*Counsel to the Trustee*

# CERTIFICATE OF SERVICE

I, Matthew E. McClintock, the undersigned attorney, hereby certify that on September 22, 2016, I caused a copy of the ***Motion to Extend Time Limit for 2004 Examinations of Roger Greenfield and Ted Kasemir*** to be served upon the following parties as indicated below.

    /s/ Matthew E. McClintock

Matthew E. McClintock, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
Telephone: (312) 337-7700
Facsimile: (312) 277-2305
e-mail: mattm@restructuringshop.com

**VIA CM/ECF**

Brian Audette
baudette@perkinscoie.com, IL32@ecfcbis.com

Ryan W Blackney on behalf of Petitioning Creditor CJUF III McCaffery Roosevelt Retail, LLC
rblackney@freebornpeters.com

Thomas R. Fawkes on behalf of Petitioning Creditor CJUF III McCaffery Roosevelt Retail, LLC
tomf@restructuringshop.com

Richard H Fimoff on behalf of Alleged Debtor Concepts America, Inc.
rfimoff@rsplaw.com, fb@rsplaw.com

Douglas C. Giese on behalf of Petitioning Creditor Galleria Mall Investors LP
dgiese@querrey.com, dcgiese@hotmail.com

Karen Hart on behalf of Petitioning Creditor Galleria Mall Investors LP
khart@bellnunnally.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Matthew E. McClintock on behalf of Petitioning Creditor Lincoln ASB Colorado Center, LLC
mattm@restructuringshop.comteresag@restructuringshop.com;seanw@restructuringshop.com;harleyg@restructuringshop.com

**VIA FIRST CLASS U.S. MAIL**

David K. Welch
135 S. LaSalle Street
Suite 3705
Chicago, Illinois 60603

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 14-34232 |
| CONCEPTS AMERICA, INC. ) | |
| ) | Honorable Pamela S. Hollis |
| Debtor. ) | |
| ) | Chapter 7 |
| _____ ) | |

**MOTION TO EXTEND TIME LIMIT FOR 2004**
**EXAMINATIONS OF ROGER GREENFIELD AND TED KASEMIR**

Brian Audette, not individually, but solely in his capacity as chapter 7 trustee ("*Trustee*") in the above-captioned bankruptcy case involving Concepts America, Inc. (the "*Debtor*" or "*Concepts*"), by and through his undersigned counsel, hereby moves (the "*Motion*"), pursuant to Rules 26(b)(2) and 30(d)(1) of the Federal Rules of Civil Procedure (the "*Rules*"), for entry of an order extending the Rule 2004 depositions of Roger Greenfield ("*Greenfield*") and Ted Kasemir ("*Kasemir*").  In support of the Motion, the Trustee respectfully states as follows

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Northern District of Illinois (the "*Court*") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3. As the Court is aware, the Debtor, Concepts, was a central part of a restaurant group (the "*Restaurant Group*") that over the years was comprised of dozens of legal entities, all of which are or were owned, directly or indirectly, by Greenfield and Kasemir (also the 50-50 owners of Concepts).

4. When new restaurants were opened, Greenfield and Kasemir typically had Concepts guaranty the leases, with Concepts holding itself out as a healthy and solvent guarantor. Concepts employees created yearly consolidated financials that showed Concepts having tens of millions of dollars in annual revenue and millions of dollars in assets. These consolidated financials were provided to landlords to induce them to sign leases and extend tenant improvement allowance credits.

5. In reality, however, ownership of many of the restaurants was actually vested directly in Greenfield and/or Kasemir – not in Concepts (making the consolidated financials overstated and intentionally misleading to the landlords to whom they were presented). When a restaurant became unprofitable, Greenfield and Kasemir would simply close down that location, leaving the restaurant's creditors (mainly landlords who had largely funded buildouts based on Concepts' alleged strength as a guarantor) to pursue remedies in court against an entity with significantly less revenue and assets than what had been presented to them on the consolidated financials.

6. By late 2012, Concepts was facing or expecting numerous landlord lawsuits on its guarantees, and Concepts' employees, all of whom ultimately report to Greenfield and/or Kasemir: (a) transferred all of the entities that were directly owned by Concepts to a holding company for no consideration (the transaction that made gaining control of these entities post-bankruptcy more difficult); (b) diverted into other accounts restaurant credit card revenues that had historically been commingled into Concepts' bank account, resulting in Concepts going from millions of dollars in monthly revenue to nothing; (c) issued a $1.8 million "note" to Greenfield for "loans" that had never previously been documented; and (d) took a number of other actions that made collection against Concepts and/or its subsidiaries more difficult.

7. The result of all of the foregoing is that when landlords began to obtain judgments against Concepts, post-judgment discovery revealed that in stark contrast to the consolidated financials that Concepts had provided to these same landlords just a matter of months before (again, showing tens of millions of dollars in revenue and substantial assets), *Concepts suddenly had no direct assets and no revenues*.

8. When this became apparent, creditors worked together and filed the involuntary bankruptcy petition on September 19, 2014. The Debtor consented to the petition on November 18, 2014, and the Trustee was appointed on January 27, 2015. In its schedules the Debtor listed $0 in assets and well over $12 million in liabilities.

9. More troubling is that this is not the first time an entity owned by Greenfield and Kasemir has engaged in this type of behavior. Restaurant Development Group, Inc. ("*RDG*") was, as a practical matter, the Debtor's predecessor – an entity with the same basic ownership structure (*i.e.*, basically Roger Greenfield and Ted Kasemir) and that was the "face" of the restaurant group. As here, RDG held itself out to be the owner of numerous restaurants, it served as the guarantor on the leases for these restaurants, it racked up huge debts when these leases went into default, and, although it appeared that RDG was once profitable and had assets sufficient to pay all or at least some of the lease guarantees, allegedly transferred substantially all of its assets out of reach of its creditors. RDG, like Concepts America, ended up in a Chapter 7 bankruptcy proceeding and, following litigation commenced in 2007 by the chapter 7 trustee, the principals of RDG (*i.e.*, Greenfield and Kasemir) along with RDG's accountant and attorneys settled the litigation for approximately $8,400,000. *See In re Restaurant Development Group, Inc.*, Case No. 07-00592 (Bankr. N.D. Ill.) [Docket No. 347].

10. Since his appointment, and subsequent retention of special counsel, the Trustee has undertaken a detailed investigation to ensure that he has a full understanding of the above circumstances (which are greatly simplified for the purposes of this Motion), and to identify potential causes of action that can be pursued for the benefit of creditors. To this end, the Trustee has had to obtain and review bank statements and associated documents, as well as corporate records, correspondence, and numerous other materials spanning over four years for dozen of entities, with almost every such entity not only having had multiple bank accounts, but having changed banks at least once during the relevant period. Credit card processing records for these entities have also had to be obtained and reviewed to track the revenue into these various accounts, and the Trustee has had to piece together how entities were formed and funded (requiring supplemental discovery from a host of other parties), investigate numerous transfers and transactions, and try to gain an understanding of the extent of comingling between and among Greenfield and Kasemir and the dozens of entities that at one time or another were part of the Restaurant Group. This has been an extensive undertaking.

11. The Trustee's investigation has revealed extensive comingling, raised serious questions about the timing and purpose of multiple transactions that Concepts' employees and related entities engaged in, and has generally left the Trustee with numerous questions that can ultimately only be explained by the two people who owned and ran the Restaurant Group – Greenfield and Kasemir. Accordingly, pursuant to subpoenas issued in accordance with this Court's initial Rule 2004 order, Mr. Greenfield's deposition was scheduled to occur on September 13, 2016, and Mr. Kasemir's was scheduled to occur on September 22, 2016 (dates that were agreed to by their counsel prior to the Trustee issuing the subpoenas). These were the first depositions to be taken by the Trustee, putting aside the initial examination at the meeting of

creditors, which of course occurred long before the Trustee had conducted written discovery and gained at least a working understanding of the above-described issues.

12. Mr. Greenfield did appear on September 13, but given the extent of the issues about which the Trustee needed to examine Mr. Greenfield, the deposition was not completed in seven hours. The Trustee advised Mr. Greenfield during the deposition that additional time was needed to allow him to examine Mr. Greenfield about a number of critical topics central to identity and location of Concepts' assets available for its creditors. Mr. Greenfield refused to consent to additional time, either then or on another date. On Friday, September 16th, in hopes of avoiding the need to file this motion, the Trustee again reached out to counsel for Mr. Greenfield and requested an agreement for additional time. In hopes of reaching an agreement, the Trustee was willing to curtail the scope of his examination on certain topics and, as such, would have agreed to less time than is requested herein to avoid the cost of a motion. The Trustee's efforts to reach an agreement were flatly rejected, necessitating this motion. As such, the Trustee now seeks sufficient additional time to allow him to fully examine the witness as to identity and location of Concepts' assets.

13. On September 21, the day before his deposition, Mr. Kasemir's attorney informed the Trustee that Mr. Kasemir would be unable to appear due to a family issue. While the Trustee is sensitive to any such issue, when that deposition occurs (if it is not rescheduled promptly, the Trustee will be moving to compel given the timing), for the same reasons that seven hours was not sufficient for Mr. Greenfield, there is no question that seven hours will not be sufficient for Mr. Kasemir (in fact, Mr. Greenfield professed a lack of knowledge concerning many critical issues, and informed the Trustee that Mr. Kasemir will have better information). Hence by this Motion the Trustee is also seeking to extend the time for examining Mr. Kasemir.

4828-2420-7416, v. 1                              5

**RELIEF REQUESTED**

14.     By this Motion, the Trustee requests that this Court enter an order extending the time for the Greenfield and Kasemir depositions, each by an additional six hours, without prejudice to the Trustee's right to seek an additional extension or extensions if needed.

**BASIS FOR RELIEF**

15.     Rule 30(d)(1) relates to the duration of depositions and provides as follows:

> (d) Duration; Sanction; Motion to Terminate or Limit.
>
> (1) Duration. Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

16.     Rule 26(b)(2) further states that:

> By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30.

17.     As noted by Rule 30, the Court must allow additional time if needed for a fair examination of the witness. *See, e.g., Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 521 (7th Cir. 2008) (noting that Rule 30 does "not cap depositions categorically at seven hours"); *Roberson v. Bair*, 242 F.R.D. 130, 138 (D.D.C. 2007) ("The court is required to permit more time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent…").

18.     Rule 30(d) requires only that the movant establish that "good cause" exists to extend an examination. *See* Advisory Committee Notes to Rule 30(d) ("The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order"). Certain courts have noted that "[p]reoccupation with timing is to be avoided" and that the seven hour time limit "is merely a guide." *Condit v. Dunne*,

225 F.R.D. 100, 112 (S.D.N.Y. 2004); *see also Dow Chem. Co. v. Reinhard*, No. 07-12012-BC, 2008 WL 1735295, at *3 (E.D. Mich. April 14, 2008) ("Although the rule generally limits a deposition to a single day of seven hours, on its face, the rule provides for extensions beyond that presumptive limitation. Indeed, "[t]he court *must allow additional time* ... if needed to fairly examine the deponent ....") (emphasis in original).

19. Here, as noted above, the Trustee's investigation of Greenfield and Kasemir's Restaurant Group has had to cover the financial interaction of dozens of entities[1] stretching back over a period of at least four years (and in some cases, for example, trying to understand ownership of entities, or even the basis for amounts claimed by Mr. Greenfield and Mr. Kasemir in their proofs of claim, far longer).

20. The Trustee's investigation has been made more difficult by the extensive commingling of assets between and among entities, frequent changes to banks and bank accounts (vastly increasing the number of accounts the Trustee has been required to examine), the frequent use of cashier's checks and other instruments written to "cash" (often for large sums), and the extremely irregular (and often indirect) methods by which Mr. Greenfeld and Mr. Kasemir have withdrawn money from the Restaurant Group over time.

21. The number of topics that the Trustee has to address with both Mr. Greenfield and Mr. Kasemir is voluminous, and many of the topics are extremely document-intensive. For example, at Mr. Greenfield's September 13, 2016 deposition, the Trustee had to cover the following topics, among many others:

> (a) The ownership and management of over thirty entities (many of which the Trustee still is missing corporate documents for, despite Greenfield and

---

[1] It is worth noting that the Trustee could issue 30(b)(6) subpoenas for dozens of entities, but that would be highly inefficient given that Mr. Greenfield and Mr. Kasemir together or individually own all of the entities within the Restaurant Group. Moreover, as discussed below, a number of the topics that the Trustee needs to cover are specific to the individuals – such as payments received and proofs of claim.

4828-2420-7416, v. 1                                7

      Kasemir's obligation to turn over same pursuant to the 2004 order), and the various bank accounts used by those entities (A copy of Trustee Exhibit 1, used at Mr. Greenfield's deposition, is attached as <u>Exhibit A</u>).

    (b) The roles and duties of approximately a dozen employees who were believed to provide services to Concepts and some or all of the other entities within the Restaurant Group, including whether Concepts was paying them for services performed for other entities.

    (c) The role of 1840 Pickwick LLC (the entity that owned the real estate where the Restaurant Group was headquartered), including which entities paid rent at that location, the existence of a lease or leases for the entities headquartered there, and other associated matters.

    (d) Management services provided by employees of Concepts to other entities, and the existence of management agreements (none existed).

    (e) The nature of "Restaurants-America" – what it is, how its gift card program operated, who managed it, why payments to it were comingled with Concepts, etc.

    (f) The deceptive consolidated financials, including who prepared them, what is included, and why the revenue figures in the consolidated financial differ from what Concepts reported to the Internal Revenue Service, often by tens of millions of dollars.

    (g) The comingling of credit card revenues from the entities comprising the Restaurant Group into several comingled bank accounts, and then further comingling between those comingled bank accounts.

    22.    The deposition process was at many times slowed by Mr. Greenfield's professed lack of knowledge concerning many topics (including even basic topics such as the ownership and management of entities that he is the sole, or one of two, owners of), requiring the Trustee to share documents and/or have Mr. Greenfield explain who would have knowledge. In addition, some of the topics required the extensive use and review of documents, such as having Mr. Greenfield review the credit card records for numerous entities to confirm where funds were being deposited (often into comingled accounts), and to establish and understand why that was changed in mid-2013 for each of those entities.

23. At the conclusion of the seven hours, the Trustee had not yet been able to reach to critical topics such as: (a) comingling of funds after mid-2013 when credit card receipts had been diverted away from Concepts' bank account into other accounts; (b) Mr. Greenfield's $1.592 million proof of "claim" (which covers nineteen payments Mr. Greenfield allegedly made to or for the benefit of Concepts dating back to 2007); (c) issues relating to the Debtor's schedules; (d) the $1.8 million "note" to Mr. Greenfield that Mr. Greenfield on behalf of numerous entities that supposedly owed him money in late 2012; (e) the transfer of the Concepts subsidiaries to Concepts Restaurant Holdings for no consideration; (f) millions of dollars in payments received by Mr. Greenfield and/or his wife or associated entities from entities within the Restaurant Group; and (g) a number of other topics (including some that the Trustee would rather not preview in this Motion).

24. In sum, cause exists to extend Mr. Greenfield's deposition, and having reviewed the remaining materials, at this time the Trustee is requesting an additional six hours.

25. The arguments for extending the deposition for Mr. Greenfield apply at least equally to Mr. Kasemir. Although Mr. Kasemir did not appear for his deposition, the Trustee will need to cover many or most the same topics (to ensure consistent answers), there are a number of topics that are specific to Mr. Kasemir (such as his proof of claim and payments he received, to name a few), and on many topics Mr. Greenfield professed a lack of knowledge and "punted" to Mr. Kasemir, including anything relating to specific financial transactions. Cause thus exists to extend Mr. Kasemir's deposition by the same six hours.

26. Finally, the Trustee respectfully submits that under the circumstances, the requested extensions should be granted without prejudice to the Trustee's right to seek more time for one or both depositions if needed. While the Trustee will of course endeavor to be as

efficient as practicable, capping the time would only encourage delay by the deponents and limit the effectiveness of the extensions. It is essential that the Trustee be allowed to complete his investigation and identify claims that can be pursued for the benefit of those creditors, and Mr. Greenfield and Mr. Kasemir should not be allowed to rely on the complexity of the scheme they orchestrated to avoid fully testifying about a series of transactions that resulted in landlords and other creditors being owed over $12 million.

**WHEREFORE**, for the foregoing reasons the Trustee respectfully requests that the Court enter an order (a) extending the depositions of Mr. Greenfield and Mr. Kasemir for six hours each, without prejudice to the Trustee's right to seek additional extensions if needed and (b) granting such other and further relief as the Court deems appropriate.

Dated: September 22, 2016

Respectfully submitted,

**GOLDSTEIN & MCCLINTOCK LLLP**

By: /s/ Matthew E. McClintock

Matthew E. McClintock, Esq.
Daniel Curth, Esq.
Sean P. Williams, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
Telephone: 312.337.7700
Facsimile: 312.277.2305
e-mail: mattm@goldmclaw.com

*Counsel for Brian Audette, as Chapter 7 Trustee for Concepts America, Inc.*

4828-2420-7416, v. 1              10