## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 14 B 34232 |
| | ) | |
| CONCEPTS AMERICA, INC., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

### MEMORANDUM OPINION

This matter comes before the court on the Trustee's Objection to Claim No. 6 Asserted

by Galleria Mall Investors LP ("the Galleria").  Brian Audette, not individually but as the chapter

7 trustee ("Trustee') for the bankruptcy estate ("Estate") of Concepts America, Inc. ("Debtor")

seeks to reclassify proof of claim no. 6 as well as reduce the amount.  For all of the reasons

stated below, the court will sustain the Trustee's objection.

### JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district

court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §

157(b)(2)(B). Venue is proper under 28 U.S.C. § 1409(a).

### BACKGROUND

The Trustee and the Galleria agreed that many of the facts underlying this claim objection

were undisputed.  In order to avoid the need for an evidentiary hearing, they prepared and filed a

Joint Stipulation of Facts.

1.  In or around May 2011, the Galleria, as landlord, and Townhouse DG LLC d/b/a

    Townhouse Kitchen & Bar, as tenant ("Tenant"), entered into a lease ("Lease") pursuant

    to which Tenant leased a restaurant space from the Galleria. (Joint Stipulation of Facts ¶

    1 ("Joint Stip.").

2.  At approximately the same time, Debtor executed a guaranty pursuant to which it guaranteed Tenant's obligations under the Lease ("Guaranty"). (Joint Stip. ¶ 5).

3.  The Lease was amended by the First Amendment, dated April 5, 2013. (Joint Stip. ¶ 3, Ex. A-1).

4.  On October 29, 2013, the District Court of Dallas County, Texas entered a Final Default Judgment Order in favor of the Galleria and against the Tenant and the Debtor, jointly and severally in the amount of $925,341.87, plus applicable pre-judgment interest, plus reasonable attorneys' fees in the amount of $27,616.75, plus applicable post-judgment interest and costs of court in connection with Tenant's breach of the Lease and Debtor's breach of the Guaranty ("Judgment"). (Joint Stip. ¶ 7).

5.  About three months later, the Galleria domesticated the Judgment with the Circuit Court of Cook County.  Around the same time, it caused a Citation to Discover Assets ("Citation") to be issued against the Debtor. (Joint Stip. ¶¶ 9, 11).

6.  In connection with the Citation, the Galleria served discovery requests on the Debtor. (Joint Stip. ¶ 13).

7.  On March 19, 2014, the Debtor, through one of its attorneys, made its first personal appearance in the Citation proceedings pending in the Circuit Court of Cook County, Illinois ("Citation Proceedings"). (Joint Stip. ¶ 14).

8.  Orders were entered in the Citation Proceedings on March 19, July 8 and July 9, 2014. (Joint Stip. ¶¶ 15-17).

9.  The July 9 order recorded certain rulings made on the record the day before regarding objections filed by Debtor to the Citation and document riders.  The court reserved ruling and continued the hearing on certain remaining objections, requiring the Tenant and

2

Debtor and third-party citation respondents to file amended or revised objections with factual and legal support.  The matter was set for continued hearing on August 20, 2014. (Joint Stip. Ex. H).

10. On or about August 15, 2014, the Galleria filed a motion for rule to show cause for failure to comply with court orders ("Contempt Motion") in the Citation Proceeding. (Joint Stip. ¶ 18).

11. At the August 20 hearing, the court did not expressly continue the citation lien.  The August 20 order states in substance: "This cause coming to be heard pursuant to this court's prior order for status of compliance with all pending citations and Plaintiff's motion for rule to show cause against Defendants and third parties; due and proper notice to all parties, counsel for all parties present, and this court being fully advised of the premises, IT IS HEREBY ORDERED THAT (1) Over Plaintiff's objections, all Defendants/third party respondents shall have until 9-10-2014 to provide complete responses to all citation riders which specifically address each request and specifically identifies each document produced in response; and (2) Plaintiff's motion for rule is entered/continued to 9-22-2014 at 11:00 a.m. in Room 2503." (Joint Stip. Ex. J).

12. On September 19, 2014, three creditors filed an involuntary chapter 7 petition ("Involuntary Petition") against the Debtor.  The Galleria was one of those three petitioning creditors. (Joint Stip. ¶¶ 21, 23).

13. On the Involuntary Petition, the Galleria's claim is listed as $925,341.76.  No information is provided on the petition as to whether the Galleria's claim is secured, undersecured or unsecured.  The nature of the Galleria's claim is described as "Judgment." (Joint Stip. ¶ 24, Ex. K).

14. Orders were entered in the Citation Proceedings on September 22 and October 14, 2014. (Joint Stip. ¶¶ 25-26).

15. On November 18, 2014, the Debtor consented to the entry of an order for relief under Chapter 7 of the Bankruptcy Code. (Joint Stip. ¶ 27).

16. On January 16, 2015, the Galleria filed the Proxy ("Proxy"), pursuant to which it appointed the law firm of Querrey & Harrow, Ltd. as its proxy in the election of the Chapter 7 trustee and to cast its vote for a trustee pursuant to 11 U.S.C. § 702. (Joint Stip. ¶ 29, Ex. O).

17. In the Proxy, the Galleria states that, as of the petition date, it held a claim in the amount of at least $925,341.87.  (Joint Stip. ¶ 31, Ex. O).

18. On January 20, 2015, the United States Trustee filed a Report of Undisputed Election. (Joint Stip. ¶ 32, Ex. P).

19. On December 11, 2015, the Galleria filed Proof of Claim No. 6 in the amount of $1,050,309.60 ("Claim") in this bankruptcy case.  The stated basis for the Claim is the Judgment.  The Galleria asserted that the Claim is fully secured by virtue of a lien created by the Citation.  (Joint Stip. ¶¶ 34, 36-37, Ex. Q).

20. The last day for the filing of claims by creditors, including governmental units, was February 5, 2016. (Joint Stip. ¶ 38).

21. If 11 U.S.C. § 502(b)(6) applies to limit the Galleria's Claim, then the Claim is capped at $362,022.15, regardless of its secured status.  If § 502(b)(6) does not apply, then the Claim is $1,050,309.60 (plus any additional accrued post-judgment interest as allowed by law), regardless of its secured states. (Joint Stip. ¶¶ 39-40).

4

## DISCUSSION

### A.  The Claim Objection is Procedurally Proper

The first issue in dispute is whether this matter is in the proper procedural posture for the court to rule.

"A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).  Since a properly filed proof of claim is valid on its face, the objecting party has the burden to introduce evidence or legal authority rebutting this presumption. *See In re Pierport Development & Realty, Inc.*, 491 B.R. 544, 547 (Bankr. N.D. Ill. 2013).  Once it does so, the burden shifts to the claimant. *See In re The Budd Company, Inc.*, 540 B.R. 353, 362 (Bankr. N.D. Ill. 2015).  The ultimate burden always remains with the claimant to establish by a preponderance of the evidence that its claim is valid. *See In re McCoy*, 355 B.R. 69, 72 (Bankr. N.D. Ill. 2006).

Objections to claims are governed by Fed. R. Bankr. P. 3007.  Parties in interest who file an objection to claim "shall not include a demand for relief of a kind specified in Rule 7001" in that objection. Fed. R. Bankr. P. 3007(b).  Fed. R. Bankr. P. 7001(2) states that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding.  Consequently, the Galleria argues that the Trustee must file an adversary proceeding in order to "reclassify" its claim from secured to unsecured.

The Trustee disagrees with the Galleria's characterization of his request.  "The Trustee is not challenging the creation of the Citation Lien, seeking to avoid the Citation Lien, or otherwise seeking the kind of affirmative relief specified in Rule 7001." (Reply, p. 9).  Instead, he asks the court to sustain his objection to the Claim as secured on the basis that either: (1) the Citation

5

Proceedings terminated prior to the commencement of this case; or (2) Galleria waived its secured status.

In support of its argument that the Trustee can dispute the secured status of its claim only through an adversary proceeding, the Galleria cites *In re Grand View Fin. LLC*, 2018 WL 3025273 (Bankr. C.D. Cal. Jun. 19, 2018) and *Matter of Haber Oil Co., Inc.*, 12 F. 3rd 426, 437-40 (5th Cir. 1994).

The Galleria's cited cases are not on point and are not persuasive authority. In neither case did the movant seek to reclassify the status of a claim from secured to unsecured. In *Grand View*, the movant sought recovery of property under 11 U.S.C. § 542. The parties disputed whether the matter could proceed by motion because Fed. R. Bankr. P. 7001(1) provides that "a proceeding to recover money or property" is an adversary proceeding. Although the *Grand View* court decided that the motion was procedurally defective, the holding that an adversary proceeding was required to pursue a request for turnover of property is not helpful authority in deciding the issue before the court today.

Neither is *Haber Oil* useful in determining whether the Trustee's objection to claim should proceed as an adversary proceeding. The movant in *Haber Oil* "agree[d] that he made a demand for relief that necessitated an adversary proceeding under Bankruptcy Rule 7001, but he insist[ed] that the proceedings leading up to the bankruptcy court's September 4, 1990, order were in fact a full-blown adversary proceeding for all substantive purposes." *Haber Oil*, 12 F. 3rd at 437 (quotation omitted). The opinion provides a discussion of the need to follow the adversary proceeding rules, and why the movant's actions did not satisfy the pleading requirements, but these general statements do not shed light on the question of whether the Trustee's objection to claim in this case should be brought as an adversary proceeding.

6

The Trustee's citation to *In re Stoecker*, 143 B.R. 118 (Bankr. N.D. Ill.), *aff'd in part,*

*rev'd in part*, 143 B.R. 879 (N.D. Ill. 1992), *aff'd in part, vacated in part*, 5 F. 3rd 1022 (7th Cir.

1993), provides more guidance for the court.  The *Stoecker* trustee filed an objection to the Bank

of Bellwood's claim under a particular subsection of § 502: "[T]he court shall disallow any claim

of any entity . . . that is a transferee of a transfer avoidable under section . . . 547[.]" 11 U.S.C. §

502(d).  He argued that the bank's claim should be treated as unsecured, rather than secured,

because its security resulted from voidable preferential transfers under section 547.

The *Stoecker* court found that the trustee could proceed through the claims objection

process without filing an adversary proceeding because he did "not seek to avoid Bellwood's

liens. Rather, he simply seeks to disallow the claim as secured."  *Id.* at 128.  As one commentator

writes:

> The validity of a lien may be determined in contexts other than adversary
> proceedings. A common situation is when a secured creditor files a proof of claim
> and the trustee or debtor in possession files objections thereto pursuant to Rule
> 3007. It is possible for the trustee to dispute the secured status of a creditor filing
> a proof of claim by denial and affirmative defense without filing an adversary
> proceeding. Unless the creditor can establish its secured status, its claim will be
> disallowed as a secured claim.

10 Collier on Bankruptcy ¶ 7001.03 (16th ed. 2020) (footnote omitted).  *See also In re McCowan*,

2018 WL 4056991, *2 (Bankr. E.D.N.C. Aug. 24, 2018) ("An adversary proceeding is not

required to contest secured status asserted in a proof of claim.  The validity of a lien may be

determined in a proceeding other than an adversary proceeding.") (citation omitted); *In re*

*Gilchrist*, 2011 WL 66047, *2 (Bankr. E.D.N.C. Jan. 10, 2011) ("The debtor does not contest the

amount of the claim.  She does, however, contest whether the claim is a valid *secured* claim. . .

It is, therefore, appropriate in this context to challenge the validity of the secured status of a

claim by filing an objection to that effect under § 502(b).") (citation omitted*); In re Merry-Go-*

7

*Round Enterprises, Inc.*, 227 B.R. 775, 778 (Bankr. D. Md. 1998) ("Trustee's objection does not

include either a prayer or counterclaim for the avoidance of a lien … Rather, the existence of a

lien is at issue. Because the Trustee's objection does not request relief specified in Fed. R.

Bankr. P. 7001(2) or (8), this dispute is a contested matter.") (citations omitted).

Similarly, it is appropriate for the Trustee to proceed with this claim objection to

challenge the Galleria's secured status. Rule 7001 states that "a proceeding to determine the

validity, priority, or extent of a lien" is an adversary proceeding. Fed. R. Bankr. P. 7001(2). The

Trustee does not seek to avoid the Galleria's lien or obtain other affirmative relief (such as

reclassifying an otherwise valid lien under 11 U.S.C. § 510) that would require an adversary

proceeding. Instead, the Trustee challenges the existence of a secured claim and asks the court to

sustain his objection to the Claim as secured on the basis that either: (1) the Citation Proceedings

terminated prior to the commencement of this case; or (2) the Galleria waived its secured status.

That request may be resolved through an objection to claim. *See Merry-Go-Round Enterprises*,

227 B.R. at 778.

### B. The Citation Proceeding Did Not Expire Before the Involuntary Petition was Filed

The Galleria asserts that its Claim is secured due to a lien created by the Citation

("Citation Lien"). The Trustee argues that the Citation Lien expired at the end of the day before

the Involuntary Petition was filed, and so the Galleria's claim is unsecured.

Although Illinois law regarding the creation of a citation lien was muddled for many

years, *see General Telephone Co. of Illinois v. Robinson,* 545 F. Supp. 788, 797 (C.D. Ill. 1982),

the legislature amended the relevant statute in 1993. It is now clear under Illinois law that service

of a citation to discover assets creates a perfected lien on all of the debtor's non-exempt personal

property as of the service date. *See* 735 ILCS 5/2-1402(m); s*ee also Cacok v. Covington,* 111 F.

3rd 52, 54 (7th Cir. 1997) ("The lien is considered perfected as of the date of service of the

citation."); *In re Porayko*, 2010 WL 1253949, at *3 (Bankr. N.D. Ill. Mar. 30, 2010), *aff'd sub nom. Crane v. Porayko*, 2012 WL 2702997 (N.D. Ill. July 3, 2012), *aff'd sub nom. In re Porayko*, 705 F. 3rd 703 (7th Cir. 2013).

A citation proceeding authorized by section 2-1402 "continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require." Ill. Sup. Ct. R. 277(f). Continuation of the citation proceeding is also a continuation of the citation lien. When the citation proceeding is terminated, the citation lien terminates. *See* 735 ILCS 5/2-1402(m) ("The lien is effective for the period specified by Supreme Court Rule.").

The parties do not dispute that Concepts' first personal appearance pursuant to the citation was March 19, 2014. Rule 277(f) provides that the proceeding terminated automatically 6 months from March 19, unless an extension was granted. The purpose of this "deadline is to prevent property from being encumbered by judgment liens indefinitely and to protect debtors from harassment by their creditors." *TM Ryan Co. v. 5350 South Shore, LLC*, 836 N.E. 2nd 803, 810-11 (Ill. App. Ct. 2005) (citation omitted).

The Galleria argues that since the six-month period began on March 19, the citation lien would not have expired until the end of the day on September 19, 2014. The Trustee disputes this, asserting that the lien terminated automatically at the end of the day on September 18, 2014. This one-day distinction could make all the difference because the petitioning creditors filed the Involuntary Petition against Concepts on September 19.

9

In the end, however, the dispute over which day the proceedings terminated is moot.  The
Seventh Circuit tells us that a party who delays citation proceedings is estopped from pleading
the six-month deadline.  *Resolution Tr. Corp. v. Ruggiero*, 994 F. 2nd 1221, 1228 (7th Cir. 1993).
*See U.S. v. Rogan*, 2008 WL 4853478, *2 (N.D. Ill. Nov. 3, 2008) ("even if Judith's appearance
through counsel and production of documents started the six-month period, Judith's delays in the
proceedings estop her from seeking relief under the six-month rule") (citation omitted); *Central
Laborers Pension Welfare and Annuity Fund v. Paradise Environmental Services*, 2007 WL
9777884, *3 (S.D. Ill. April 25, 2007) ("Defendants seek to avoid *Ruggiero's* holding, that a
debtor who by his own actions delays the citation proceedings should be estopped to plead the
six-month deadline"), *report and recommendation adopted*, 2007 WL 9777885 (S.D. Ill. Aug. 2,
2007).

Concepts made numerous objections to the Citation and to the Galleria's document
requests.  At the beginning of July, the Circuit Court denied many of these objections and
required Concepts to produce all documents for which its objections were denied.   About a
month later, however, the Galleria filed a motion for rule to show cause for failure to comply
with the Circuit Court's July ruling.  According to that motion, during the five months since the
Citation was originally presented, Concepts (as well as its co-defendant and third party citation
respondents) "have failed to provide any documents whatsoever which indicate whether
Defendants currently own any assets . . . [and] have not produced any bank statements."  (Joint
Stip., Ex. I, pp. 8-9).  At the hearing on August 20, the Circuit Court gave Concepts another three
weeks "to provide complete responses to all citation riders which specifically address each
request and specifically identifies each document produced in response."  (Joint Stip., Ex. J).
The Involuntary Petition was filed before the next status hearing.

The Galleria contends that in light of Concepts' resistance to the Citation Proceeding and court orders, the Trustee is estopped from pleading that the Citation Proceeding expired. The Trustee addresses this argument. (Reply, p. 4). He does not deny that Concepts dragged its feet in responding to the document requests and delayed the Citation Proceedings. Instead, the Trustee asserts only that the Galleria could have sought an extension of the proceedings, and that it was the Galleria's own action in filing the involuntary petition that cut off its rights. The Trustee does not dispute the Galleria's contention that Concepts, its co-defendant and the third-party respondents delayed the Citation Proceeding.

By focusing on the Galleria's actions rather than Concepts', the Trustee misses the point of the Seventh Circuit's ruling in *Ruggiero*:

> The citation examinations had repeatedly to be delayed because of Angelo Ruggiero's contumacious conduct, and these delays could be thought of as continuances extending the six-month period, as the statute permits. Moreover, since the deadline is intended not only to prevent property from being encumbered by judgment liens indefinitely, but also to protect the judgment debtor from being harassed by his creditors, a debtor who by his own actions delays the citation proceeding should be estopped to plead the deadline.

*Ruggiero*, 994 F. 2nd at 1228 (citations omitted). *Ruggiero's* holding applies "whether or not a party has requested an extension from the court." *Wachovia Securities, LLC v. Loop Corp.*, 2011 WL 10604426, *1 (N.D. Ill. May 9, 2011) (citations omitted).

Since Concepts delayed the Citation Proceeding, the Trustee (who steps into Concepts' shoes) is estopped from pleading the six-month deadline. Therefore, the Citation Proceeding did not terminate before the Involuntary Petition was filed and the Citation Lien was still valid on the petition date. Once the Involuntary Petition was filed, 11 U.S.C. § 108(c) operated to continue the Citation Proceeding until thirty days after termination of the automatic stay. [1]  While the

---

[1] 11 U.S.C. § 108(c) states:

Citation Proceeding continued, the lien remained valid. "§ 108(c) preserves liens that would expire under nonbankruptcy law." *In re Tires N Tracks, Inc.*, 498 B.R. 201, 206 (Bankr. N.D. Ill. 2013) (citations omitted). Since § 108(c) operates to preserve the lien, "an Illinois judgment lien creditor is not ordinarily required to take any affirmative steps to preserve a citation lien existing on the date a bankruptcy petition is filed." *Id.*

The Trustee did not dispute that 11 U.S.C. § 108(c)(2) operates to extend time periods still in effect as of the Petition Date. (Reply at p. 4). Having found that the Citation Proceeding continued and that the lien existed on the petition date, the court need not consider the Galleria's argument that the Circuit Court implicitly extended the six-month period. Similarly, the question of whether the six-month period would have ended on September 18 or 19 is moot.

## C. The Galleria Waived Its Secured Claim

Although the Trustee is estopped from asserting that the Citation Lien expired, the court's inquiry into the secured status of the Galleria's claim is not complete. The Trustee argues that even if the Citation Lien was still valid on the petition date, the Galleria waived the secured status of its claim for two reasons: (1) it acted as a petitioning creditor in connection with the Involuntary Petition without disclosing the lien; and (2) it used its claim to vote in the trustee election.

---

(**c**) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of--
    (**1**) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
    (**2**) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

12

### i.    The Galleria Waived Its Secured Claim When It Filed the Involuntary Petition Without Disclosing Its Security

An involuntary petition may be commenced under 11 U.S.C. § 303(b) "by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title – (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claims aggregate at least $16,750[2] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.]"

The Galleria contends – and the court agrees – "that there is no prohibition against a secured creditor acting as a petitioning creditor." (Response, p. 12). The issue is not whether a secured creditor may be a petitioning creditor. Instead, the question is whether the Galleria's failure to disclose that security on the petition constitutes a waiver of the security.

Waiver is the intentional relinquishment of a known right. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), *overruled in part on other grounds*, *Edwards v. Arizona*, 451 U.S. 477 (1981). That intentional relinquishment may be manifested "either expressly or by conduct inconsistent with an intent to enforce that right …". *Saverslak v. Davis-Cleaver Produce Co.*, 606 F. 2nd 208, 213 (7th Cir. 1979), *cert. denied*, 444 U.S. 1078 (1980).

In support of his argument that the Galleria waived the secured status of its claim at the filing of the Involuntary Petition, the Trustee cites *In re Cent. Illinois Oil & Ref. Co.*, 133 F. 2nd 657 (7th Cir. 1943). In *Central Illinois*, the Seventh Circuit described a situation in which a creditor's conduct was inconsistent with an intent to assert that it was secured:

> Did the filing of the involuntary petition in bankruptcy amount to a waiver of lien by the conditional vendor? Our answer to this question must be in the affirmative. But it is not the fact of the filing of the involuntary petition in bankruptcy by a secured creditor that operated as a waiver. *It is the filing of such a petition by a*

---

[2] This amount was $15,325 at the time the Involuntary Petition was filed.

> *secured creditor who makes no mention of such security, that bars him.* If
> appellant is to be considered a secured creditor, he failed to state the amount of
> his debt which is not covered by the security, which unsecured balance, if it
> exceeds $500, gave him the right to file such petition. If he has no such unsecured
> debt due him, he has no right to file the petition. Therefore, since he filed a
> petition wherein he stated his debt in excess of $5,000, making no mention of
> security existing, or if existing, the amount thereof, it must be assumed either that
> he had no security, or he waived such security as he had.

*Id.* at 658-59 (emphasis added). *See Mount Vernon Hotel Co. v. Block*, 157 F. 2nd 637, 640 (9th

Cir. 1946) ("It seems well settled that the mere filing of a petition in involuntary bankruptcy by a

secured creditor who deliberately makes no mention of his security constitutes a waiver of that

security. . . . It is the mere filing by the creditor of a petition without mentioning his security that

constitutes the waiver. Waiver is a unilateral act, and the only one who may waive a lien is the

one who holds it.") (footnote omitted). *Cf. In re American Gypsum Co.*, 31 B.R. 187, 188-89

(Bankr. D.N.M. 1983) ("[W]here a creditor is secured but not to the entire amount of the claim,

and where the unsecured dollar amount is sufficient to meet the requirements for the filing of an

involuntary petition, the assertion of the unsecured portion of the claim to so file the involuntary

petition does not waive the secured portion of that creditor's claim absent a knowing and

intentional waiver. The secured portion cannot be waived through error or inadvertence.")

(citation omitted).

Both *Central Illinois* and *Mount Vernon Hotel* were decided under the Bankruptcy Act,

but they are still good law. "Under the Act, a party bringing an involuntary petition could waive

its security by failing to mention the security in its petition. There is no apparent reason why this

rule should not apply to cases brought under the Code . . .". *In re All Media Properties, Inc.*, 5

B.R. 126, 141 (Bankr. S.D. Tex. 1980) (citations omitted), *aff'd*, 646 F. 2nd 193 (5th Cir. 1981),

*overruled on other grounds*, *In re Trusted Net Media Holdings, LLC*, 550 F. 3rd 1035, 1046 (11th

Cir. 2008) ("To the extent that the former Fifth Circuit's decision in *All Media* indicates that the

§ 303(b) elements are jurisdictional, we overrule it.").

The Galleria argues that no rule "stands for the proposition that a claimant waives its

secured status if it acts as a petitioning creditor." (Response, pp. 11-12). It seeks to distinguish

*Central Illinois* on two grounds: (1) that the secured creditor was the only petitioning creditor in

that case; and (2) the petitioning creditor intentionally did not disclose his security, believing he

had a better chance of recovery as an unsecured creditor.

Neither of these arguments succeed. The *Central Illinois* panel clearly stated that "it is

not the fact of the filing of the involuntary petition in bankruptcy by a secured creditor that

operated as a waiver. It is the filing of such a petition by a secured creditor who makes no

mention of such security, that bars him." 133 F. 2nd at 659. Since the petitioning creditor acted

alone, "the only inference which can be drawn is that the entire sum of $5,760 was unsecured –

in this instance unsecured because of a waiver of security." *Id.* Although the Galleria did not act

alone, none of the petitioning creditors described their claims as secured or unsecured. It is just

as reasonable to infer that the Galleria was unsecured as it would be to make that inference

regarding either of its co-petitioning creditors.

As for the petitioning creditor's intent, the *Central Illinois* panel explained the likely

basis for its choice to file the involuntary petition: "[I]t concluded it would benefit little by a

reclamation of its conditionally sold merchandise, but would perhaps gain through a bankruptcy

proceeding where the property could be operated as a going concern." *Id.* While this may

explain why the petitioning creditor acted as it did, it was not the basis of the court's holding that

the creditor waived its security. After noting that secured creditors have the right to surrender

their lien in order to file an involuntary petition, *id.* at 659, n.5, the court concluded that this

creditor must have done just that – surrendered its lien – when it made no mention of its security on the petition.

The Galleria did not disclose its secured claim on the petition and does not deny its failure to do so.  This court has no direct evidence regarding why the Galleria did not disclose its security on the petition.  We have only the Galleria's allegations in a brief and at argument that it "did not misrepresent its status as unsecured in order to better its chances at recovery." (Response, p. 13).  But the most logical inference is that the Galleria believed its chances of recovery would improve by filing the Involuntary Petition – otherwise, why go to the trouble and expense?  The Galleria had already spent a year chasing Concepts through courts in two states. It had reached the point of filing a motion for rule to show cause in the Citation Proceeding. Perhaps the Galleria – like the petitioning creditor in *Central Illinois* – concluded it would benefit little by pursuing a state court citation proceeding alone, even if its debt was secured by a citation lien, compared to a bankruptcy case where property would be collected, liquidated and distributed by a trustee.

*Central Illinois* tells us that a secured creditor's failure to disclose its security on an involuntary petition is conduct inconsistent with an intent to enforce its right to security. Therefore, it is a knowing and intentional waiver of that right.  The Galleria waived its security when it filed the Involuntary Petition and made no mention of the Citation Lien.

####        ii.        The Galleria Waived Its Right to Assert That It Is a Secured Creditor Because It Filed a Proxy to Vote in the Trustee Election

Even if the Galleria had not filed the Involuntary Petition without disclosing its security, there is another basis for finding that the Galleria waived its lien.

The U.S. Trustee appointed Frances Gecker as interim trustee in Concepts' bankruptcy case on November 21, 2014, three days after the court entered the order for relief.  At the

16

meeting of creditors on January 16, 2015, however, an election was requested and conducted.

The Galleria filed the Proxy on the same date, appointing the law firm of Querrey & Harrow,

Ltd. as its proxy in the Chapter 7 trustee election and to cast its vote for a trustee.[3]  In the Proxy,

the Galleria stated that, as of the petition date, it held a claim in the amount of at least

$925,341.87.

 The Bankruptcy Code provides that only unsecured creditors may vote for a Chapter 7

trustee:

> **(a)** A creditor may vote for a candidate for trustee only if such creditor--
>
>  **(1)** holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;
>
>  **(2)** does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and
>
>  **(3)** is not an insider.

11 U.S.C. § 702.  The purpose of this Code section "is to permit the general unsecured creditors

to provide for the administration of the chapter 7 estate by a trustee of their own choosing."  *In re*

*Nanvarok Seven, Inc.*, 148 B.R. 86, 87 (Bankr. D.D.C. 1992).  *See In re Klein*, 110 B.R. 862, 877

(Bankr. N.D. Ill.) (Secured parties "invariably find the pursuit of their best interests to be at odds

with the interests of the general unsecured creditors of the estate by removing assets from the

pool. The Code therefore denies them the right to vote for the trustee, the representative of the

general unsecured creditors, under § 702(a)(2)."), *aff'd in part, rev'd in part on other grounds*,

119 B.R. 971 (N.D. Ill. 1990), *appeal dismissed*, 940 F. 2nd 1075 (7th Cir. 1991).

---

[3] Eligible creditors may vote by proxy.  Fed. R. Bankr. P. 2006.

Because only creditors holding unsecured claims may vote in an election, the Galleria made a representation that it held an unsecured claim when it appointed a proxy to vote its claim in the trustee election.  11 U.S.C. § 702(a)(1).  "Fully secured creditors are not eligible to vote." *In re Northern Star Development and Construction, LLC*, 2016 WL 3633081, *2 (Bankr. M.D. Fla. 2016) (footnote omitted); *In re TBR USA, Inc.*, 429 B.R. 599, 617 n.20 (Bankr. N.D. Ind. 2010) ("Thus, a creditor which has filed a claim solely as a secured claim is omitted under § 702(a)(1) from the git go.").  *Cf. Matter of Lindell Drop Forge Co.*, 111 B.R. 137, 146 (Bankr. W.D. Mich. 1990) ("Therefore, however unlikely, if a secured creditor desires to participate in the election of a chapter 7 trustee, it may waive or limit the amount of the secured portion of its claim.").

When it voted, the Galleria also made a representation that it did not have an interest "materially adverse" to the interest of creditors entitled to distribution.  11 U.S.C. § 702(a)(2). That term is not defined in the Code, and the court is not going to reach back and undo the election on the grounds that a voting creditor may have held an interest materially adverse to the other creditors.  But a secured or partially secured creditor, interested in preserving its lien so that it can be paid a higher dividend than general unsecured creditors, may have an interest adverse to those unsecured creditors.  *See In re Jotan, Inc.*, 236 B.R. 79, 84 (Bankr. M.D. Fla. 1999) ("Paribas would rather be secured in all of Debtor's assets . . . while general unsecured creditors would prefer Paribas be unsecured so unsecured creditors may receive some distribution."); *In re Michelex Ltd.*, 195 B.R. 993, 1007 (Bankr. W.D. Mich. 1996) ("Finally, an undersecured creditor may hold an interest materially adverse to other creditors.") (citation omitted).

18

The Trustee argues that by appointing the law firm of Querrey & Harrow as its proxy in the election of the Chapter 7 trustee and to cast its vote for a trustee pursuant to 11 U.S.C. § 702, and by stating in the Proxy that it "holds a claim, as of the date of the filing of the Debtor's involuntary petition, in the amount of at least $925,341.87" without disclosing the Citation Lien, the Galleria waived the right to assert that it is a secured creditor.  As the court explained in *Matter of Russo*, taking actions inconsistent with holding a secured claim can result in a waiver of that security:

> Finally, in voting as an unsecured creditor in the election of the trustee of the Russo estate, Reuben Gross waived whatever secured creditor status he may have had, as provided in Section 56(b) of the Act, 11 U.S. s 92(b). Although the mere filing of a secured debt as unsecured does not conclusively amount to a waiver of security against a bankrupt's property, a valid waiver will be found to have been made if, in addition for example, the secured claimant votes the claim for the full amount in the trustee election.

*Matter of Russo*, 18 B.R. 257, 270 (Bankr. E.D.N.Y. 1982) (citation omitted).  *See, e.g., American Gypsum*, 31 B.R. at 188 (discussing *Russo* as "the clear case where a creditor should be found to have waived secured status.  The creditor states, at a § 341 meeting, that he was voting *the entire amount* of his claim as unsecured in order to elect his son as trustee of the estate.  Having done so, the court declined to allow the creditor to revoke the waiver when doing so suited his purposes.  The waiver was intentional as to the entire amount and would remain a waiver for all purposes.") (citation omitted).

The Galleria asserts that if a secured creditor's only action is voting in the trustee election, that alone is insufficient to constitute a waiver of secured status.  But the undisputed facts show that the Galleria did more than vote in the trustee election.  It participated in the filing of the Involuntary Petition as a petitioning creditor without disclosing any security.  It filed a proxy to vote in the trustee election.  The Galleria also filed a motion for examination under Fed. R. Bankr. P. 2004, making no mention of the Citation Proceedings and describing its claim as

"on or about October 29, 2013, Debtor became indebted to GALLERIA pursuant to a Judgment entered in the amount of $925,341.87." EOD 46 para. 8 (filed May 15, 2015). Over a number of months, therefore, and in more than one instance, the Galleria omitted any mention of its secured status in its representations to this court and to the parties in interest.

As discussed above, waiver is the intentional relinquishment of a known right. That intentional relinquishment may be manifested by conduct inconsistent with an intent to enforce that known right. The actions described above – filing the Involuntary Petition without disclosing its security, filing a proxy to vote in the trustee election, filing the motion for Rule 2004 exam without mentioning its security – constitute conduct inconsistent with an intent to enforce its right to be a secured creditor. Not until the Galleria filed its proof of claim at the end of 2015, more than a year after filing the Involuntary Petition and 11 months after the trustee election, did it assert that it was entitled to secured status due to the Citation Lien.

For all of the reasons stated above, the court finds that the Galleria waived its right to assert that it is a secured creditor.

## D.  11 U.S.C. § 502(b)(6) Limits the Galleria's Claim

The Trustee's final request is that the court cap the Galleria's claim pursuant to 11 U.S.C. § 502(b)(6). This subsection states:

> **(b)** Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that-- . . . .
>
> > **(6)** if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds--
> >
> > > **(A)** the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--

> **(i)** the date of the filing of the petition; and
>
> **(ii)** the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
> **(B)** any unpaid rent due under such lease, without acceleration, on the earlier of such dates[.]

Section 502(b)(6) caps a landlord's claim resulting from the termination of a lease of real property. "As the legislative history discloses, section 502(b)(6) is designed to compensate the landlord for his loss while not permitting a claim so large as to prevent other general unsecured creditors from recovering a dividend from the estate." 4 Collier on Bankruptcy ¶ 502.03[7][a] (16th ed. 2020) (quotation and footnote omitted). "Congress intended to strike a balance between compensating the landlord for his loss together with a limited sacrifice to protect other creditors and the debtor's rehabilitation." *In re Heller Ehrman LLP*, 2011 WL 635224, *4 (N.D. Cal. Feb. 11, 2011) (quotation omitted).

The Trustee asserts that the Claim does not comply with the damages limit in § 502(b)(6). In opposition, the Galleria contends that the court should decline to apply the cap for equitable reasons. In support of this argument, the Galleria points out that Concepts was the Lease's guarantor, not the lessee. The parties agreed to this fact, and the court accepts it as true. Nevertheless, Concepts' status as a guarantor rather than a lessee is not relevant. Although there is no authority on point by the Seventh Circuit, the Ninth Circuit soundly rejected this approach.

> [W]e interpret § 502(b)(6) according to its plain meaning and hold that the Cap is applicable to a guarantor.
>
> ….
>
> A plain reading of the section underscores that it is the claim of the lessor, not the status of the lessee-or its agent or guarantor-that triggers application of the Cap. The section has two predicates: "claim of a lessor" and "damages resulting from the termination of a lease of real property." [Landlord's] claim is clearly a "claim of a lessor." It is equally clear that the claim is one for "damages resulting from the termination of a lease." Because the Cap snugly fits, the court should have donned it.

*In re Arden*, 176 F. 3rd 1226, 1229 (9th Cir. 1999) (citations omitted).  *See In re Kmart Corp.*, 362

B.R. 361, 385 (Bankr. N.D. Ill.) ("Courts have reached the general consensus that a lessor's

claim against the estate of a bankrupt who is not the nominal lessee, but guarantor of the lease of

non-bankrupt tenant, is subject to the cap.") (citation omitted), *aff'd*, 2007 WL 3171316 (Oct. 24,

2007).  This court agrees with *Arden* and *Kmart* that the statute applies to claims of a lessor, not

the narrower class of claims of a lessor against its lessee.

> In further support of its argument that equity prevents application of this straightforward

statute, the Galleria asserts that in unusual circumstances, the cap should not be imposed.[4]  *See*

*In re Danrik, Ltd.*, 92 B.R. 964 (Bankr. N.D. Ga. 1988).  *Danrik* reviewed the legislative history

of the cap as well as earlier versions of § 502(b)(6).  It determined that although "in most cases,

the application of equitable principles would result in limiting the allowable claim by a landlord

against a bankrupt guarantor pursuant to § 502(b)(6) ...  [T]he facts in the case at bar are unusual

and it would be unfair to limit [the landlord's] claim by applying § 502(b)(6)."  92 B.R. at 970.

The unusual circumstances in this case, the Galleria argues, are that it spent over six years trying

to relet the space after the Tenant left, and the Claim is not disproportionately large compared to

the losses it suffered or compared to the claims of other landlords.  (Response, pp. 14-15).

> The court will not take up the Galleria's and *Danrik's* invitation to ignore the statutory

cap.  First, the court has no evidence before it regarding the Galleria's efforts to mitigate its

damages, and what success or failure it had in doing so.  Nor will the court calculate the universe

of landlord claims in an effort to determine how the Galleria's claim compares.  Even if the court

had more facts, the Seventh Circuit has been quite clear that "[w]hat the Bankruptcy Code

---

[4] To the extent that these unusual circumstances include a substantial contribution to the bankruptcy case, the
Galleria may have an alternative basis to seek compensation for its efforts.  11 U.S.C. § 503(b)(3).  That issue is not
before the court today.

provides, a judge cannot override by declaring that enforcement would be 'inequitable.'"

*Sunbeam Products, Inc. v. Chicago American Manufacturing, LLC*, 686 F. 3rd 372, 375 (7th Cir.

2012) (citations omitted).

More importantly, *Danrik* was decided over 30 years ago, prior to the Supreme Court's

*Ron Pair* decision:

> The plain meaning of legislation should be conclusive, except in the rare cases in
> which the literal application of a statute will produce a result demonstrably at
> odds with the intentions of its drafters.  In such cases, the intention of the drafters,
> rather than the strict language, controls.

*U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (quotation omitted).  *See Law v.*

*Siegel*, 571 U.S. 415, 421 (2014) ("We have long held that whatever equitable powers remain in

the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy

Code.") (quotation omitted).  *Danrik* has been heavily criticized following the issuance of *Ron*

*Pair* and *Law v. Siegel*.  *See, e.g., In re Ancona*, 2016 WL 828099, *7 (Bankr. S.D.N.Y. March

2, 2016) ("In light of the overwhelming courts . . . that have found the damages cap to apply to

claims of lessors against debtor-guarantors of leases, and the policy goals that would be served

here based upon the 'plain meaning' statutory construction under *Ron Pair,* the Court concludes

that section 502(b)(6) applies to cap the Landlord's claim against the Debtor under the

Guaranty.").

Application of the plain language of § 502(b)(6) is appropriate, regardless of what

equitable considerations might exist, unless "the literal application of [§ 502(b)(6)] will produce

a result demonstrably at odds with the intentions of its drafters."  The court therefore finds that §

502(b)(6) applies to cap the Galleria's claim.  As the parties agreed in their Joint Stipulation of

Facts, the Claim is capped at $362,022.15.

## CONCLUSION

For all of the reasons stated above, the Trustee's objection to the Galleria's claim will be

sustained.  Claim No. 6 will be reclassified as a general unsecured claim and reduced to the

amount of $362,022.15.

ENTERED:

Date:   October 22, 2020

_____
DAVID D. CLEARY
United States Bankruptcy Judge