**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 14 B 34232 |
| | ) | |
| CONCEPTS AMERICA, INC., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

This matter comes before the court on the motion of The Galleria Mall Investors LP ("the

Galleria") for allowance and payment of administrative expense claim pursuant to 11 U.S.C. §§

503(b)(3)(A), (b)(3)(D), and (b)(4) (the "Application").[1]  Brian Audette, not individually but as

the chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Concepts America, Inc.

("Debtor") objected to the Application.  The Galleria filed a reply to the Trustee's objection.

For the reasons stated below, section 503(b)(3)(D) does not support the allowance of an

administrative expense priority claim to a creditor who claims it made a substantial contribution

in a case under chapter 7.  The court will deny the Application to the extent the Galleria requests

relief under §§ 503(b)(3)(D) and (b)(4).

**JURISDICTION**

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district

court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §

157(b)(2)(B). Venue is proper under 28 U.S.C. § 1409(a).

---

[1] By order entered on January 12, 2021, at docket number 283, and pursuant to an agreement with the Trustee, the
court allowed an administrative expense claim under 11 U.S.C. §§ 503(b)(3)(A) and (b)(4) for attorneys' fees in the
amount of $11,791.50 and expenses in the amount of $102.24.  This opinion addresses the remainder of the
Application, which requests the allowance and payment of an administrative expense claim under 11 U.S.C. §§
503(b)(3)(D) and (b)(4).

**BACKGROUND[2]**

In or around May 2011, the Galleria entered into a lease with one of Debtor's affiliates, a restaurant doing business as Townhouse Kitchen & Bar ("Townhouse").  Debtor guaranteed the lease.  Townhouse eventually breached the lease, and a Texas state court entered judgment against Townhouse and the Debtor.

The Galleria pursued collection of its judgment for nearly a year, without much success.  It eventually joined two other creditors in filing an involuntary chapter 7 petition against the Debtor on September 19, 2014.

About two months later, the Debtor consented to the entry of an order for relief under Chapter 7 of the Bankruptcy Code.  The Trustee was elected at the § 341 meeting of creditors shortly thereafter.

At the beginning of September 2015, the Trustee requested and received authorization to employ Goldstein & McClintock LLLP as special counsel.  The purpose of the firm's employment was to investigate and pursue claims relating to the Debtor's pre-bankruptcy conduct, including claims regarding transfers of assets and against related entities and individuals.  The Trustee eventually filed a seventeen-count adversary proceeding against more than twenty defendants.  That proceeding is pending in this court as 16 A 691.

The Galleria contends that it "did the important work of unearthing the facts and circumstances, established by documents produced and sworn testimony taken, that gave rise to and reason for the Trustee to retain special counsel and pursue the claims against the various insiders for the benefit of the entire estate." (Reply to Application at 7).  It seeks compensation

---

[2] More background detail can be found in the Memorandum Opinion dated October 22, 2020, at EOD 251.

for these services on the basis that they provided a "substantial contribution" to the bankruptcy case.

## DISCUSSION

The Galleria seeks allowance of an administrative expense claim in the amount of $241,521.76, arguing that its investigative work made a "substantial contribution" to this bankruptcy case. Creditors who make a substantial contribution in a bankruptcy case may request allowance of their actual, necessary expenses and reasonable compensation for professional services rendered by an attorney pursuant to 11 U.S.C. §§ 503(b)(3)(D) and (b)(4):

> **(b)** After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-- . . .
>
>> **(3)** the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by--
>>
>>> **(A)** a creditor that files a petition under section 303 of this title;
>>>
>>> **(B)** a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
>>>
>>> **(C)** a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
>>>
>>> **(D)** a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
>>>
>>> **(E)** a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or
>>>
>>> **(F)** a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;
>>
>> **(4)** reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

**A.      Canons of Statutory Construction Compel the Result that Substantial Contribution Claims are not Available in Chapter 7**

The parties agreed to put aside, for now, the factual question of whether the Galleria provided a substantial contribution in this case.  This allows the court to consider first a threshold legal question:  Is a creditor's request for an administrative expense claim based on a substantial contribution in a case ever allowable in a Chapter 7?  To arrive at an answer, the court will first analyze the issues using several canons of statutory construction described by the Supreme Court and the Seventh Circuit.  "The Bankruptcy Code standardizes an expansive (and sometimes unruly) area of law, and it is our obligation to interpret the Code clearly and predictably using well established principles of statutory construction."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012).

**1.   Section 503(b)(3)(D) is plain and unambiguous**

The Supreme Court tells us that our inquiry must begin with the language of the statute. "[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others.  We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  Therefore, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances."  *Rubin v. United States*, 449 U.S. 424, 430 (1981) (quotation omitted).

The text of § 503(b)(3)(D) is plain and unambiguous.  An administrative expense claim will be allowed to "a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title[.]" Congress did not include Chapter 7 in § 503(b)(3)(D).  Therefore, the court's inquiry could end here.  "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at

4

odds with the intentions of its drafters." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (quotation omitted). *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.") (quotation omitted).

Other courts have concluded that the plain language of § 503(b)(3)(D) prohibits substantial contribution claims in Chapter 7. *See In re HealthTrio, Inc.*, 599 B.R. 119, 132 (D. Colo. 2019) ("Based on the plain language of the statute and the absence of any ambiguity, this Court agrees with the majority view that it would be unreasonable to apply a section 503(b)(3)(D) analysis to Chapter 7 and create an administrative expense category in Chapter 7 cases based on 'substantial contribution.'") (quotation omitted); *In re Dorado Marine, Inc.*, 332 B.R. 637, 640 (Bankr. M.D. Fla. 2005) ("The plain language of the statute provides for payment of expenses incurred in contributing to a case 'under chapter 9 or 11 of this title.'").

There is no evidence that limiting substantial contribution claims to Chapters 9 and 11 would be demonstrably at odds with Congressional intent. *See In re Peterson*, 152 B.R. 612, 614 (D.S.D. 1993) ("Although the parties speculate as to the reasons why Congress did not include the other bankruptcy chapters in § 503(b)(3)(D), the Court is not going to engage in speculation and attempt to divine congressional wisdom. For whatever reason, Congress chose not to include reference to those other chapters in § 503(b)(3)(D).").

Nor is there any reason to conclude that the disposition required by the text of § 503(b)(3)(D) would be absurd. The purpose of allowing an administrative expense claim under this subsection is to recognize that the creditor "substantially contribute[d] to the reorganization efforts during the pendency of a chapter 11 case." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944

(3d Cir. 1994).  *See Matter of Consol. Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986)

("the policy aim of authorizing fee awards to creditors [under § 503(b)(3)(D)] is to promote

meaningful creditor participation in the reorganization process") (quotation omitted).  There is

no reorganization in a Chapter 7 case, so it is not absurd to read § 503(b)(3)(D) as applying only

to Chapters 9 and 11.

Following the plain language analysis also comports with the American Rule that "[e]ach

litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010).  "We . . . will not deviate

from the American Rule absent explicit statutory authority."  *Baker Botts L.L.P. v. ASARCO

LLC*, 576 U.S. 121, 126 (2015) (quotation omitted).  Under the plain language of §§

503(b)(3)(D) and (b)(4), Congress did not authorize a shift of responsibility for attorneys' fees in

chapter 7.  "Because the text does not authorize fee shifting in chapter 7, the inquiry could end

there."  *In re Enloe*, No. 14-36358, 2016 WL 4595921, at *3 (Bankr. S.D. Tex. Sept. 1, 2016).

The plain and unambiguous language of § 503(b)(3)(D) is conclusive – substantial

contribution claims are allowed as administrative expenses only in Chapters 9 and 11, not in

Chapter 7.

**2. To ignore "under chapter 9 or 11 of this title" would render that phrase superfluous**

Other canons of statutory construction compel this same result.  First, Congress chose to

include the words "under chapter 9 or 11" in § 503(b)(3)(D).  It could have written the statute to

state that a creditor who makes "a substantial contribution in a case" can apply for an

administrative expense claim, making no reference to any chapter of the Bankruptcy Code.  As

an example, we need look no further than the two subsections that immediately precede §

6

503(b)(3)(D).  Neither of those subsections are limited to cases under certain chapters of the Bankruptcy Code.  11 U.S.C. §§ 503(b)(3)(B) and (b)(3)(C).

What would be the purpose of the Congressional decision to include the phrase "under chapter 9 or 11" except to limit substantial contribution claims to cases under those chapters?  To ignore those five words is to violate "one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quotation omitted).  *See Peterson*, 152 B.R. at 614 (footnote omitted) ("[I]f a creditor who makes a substantial contribution in a Chapter 12 proceeding is entitled to compensation for its expenses under § 503(b), the phrase 'in a case under Chapter 9 or 11 of this title' in subsection (3)(D) would be merely excess verbiage.").

3. **The specific limitations of § 503(b)(3)(D) govern the general permission given in § 503(b)**

Second, the Bankruptcy Code is a comprehensive statutory scheme.  In such situations we presume that Congress "has deliberately targeted specific problems with specific solutions." *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting).  Under the established canon "of statutory construction that the specific governs the general," *RadLAX*, 566 U.S. at 645 (quotation omitted), the general authorization for allowance of administrative expenses in § 503(b) is limited by the specifically defined boundaries of § 503(b)(3)(D).

"The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission." *Id.* Such is the case here.  The statutorily defined contours of a substantial contribution claim are described in § 503(b)(3)(D).  Allowing creditors recourse to the general language of § 503(b) ignores the specific solution Congress designed.  "In the context of § 503(b)(3)(D), the general

authorization provided by the expansive term 'including' is limited by the specific authorization of the phrase 'in a case under chapter 9 or 11 of this title.'  The Court will not render the specific authorization superfluous by allowing the general to control." *HealthTrio*, 599 B.R. at 132 (quotations omitted).  *See also In re Elder*, 321 B.R. 820, 829 (Bankr. E.D. Va. 2005) ("[W]hen a subsection directly addresses the type of administrative expense sought, the restrictions in it cannot be avoided by appealing to the non-exclusive nature of § 503(b)."); *In re Beale*, 358 B.R. 744, 748 (Bankr. N.D. Ill. 2006) (agreeing with *Elder*).

4. **Congress chose to allow administrative expense claims for substantial contributions in Chapters 9 and 11, therefore it necessarily meant to exclude such claims in Chapters 7, 12 and 13**

Finally, this reading of the statute is supported by the concept *expressio unius est exclusio alterius*, which means "to express or include the one thing implies the exclusion of the other."  *In re Globe Bldg. Materials, Inc.*, 463 F.3d 631, 635 (7th Cir. 2006) (quotation omitted).  Congress provided in § 503(b)(3)(D) that creditors who make substantial contributions in cases under Chapter 9 or 11 shall be allowed an administrative expense.  By expressly stating that the substantial contribution must be made in a case under Chapter 9 or 11, Congress implied the exclusion of administrative expense status for substantial contributions in cases under Chapter 7, 12 or 13.  *See In re Connolly N. Am., LLC*, 802 F.3d 810, 822 (6th Cir. 2015) (O'Malley, J., dissenting) ("Congress's decision to explicitly *include* Chapters 9 and 11 in § 503(b), while *not including* Chapter 7 in even the earliest drafts of the Bankruptcy Act, further persuades me that Congress did not intend for § 503(b) to cover substantial contributions in Chapter 7 proceedings.").  *See also In re Schimmel*, No. 11-10272, 2012 WL 6538953, at *1 (Bankr. N.D. Cal. Dec. 12, 2012) ("The maxim that *inclusio unius, exclusio aterius* applies here; any flexibility the court may have to deal with unanticipated situations does not apply when Congress has set forth the law applicable to an anticipated situation.").

Under each and every one of these canons of statutory construction, the result is clear. The court cannot allow an administrative expense claim to a creditor based on substantial contribution in a case under Chapter 7.

**B.     The Majority View and Analysis of § 503(b) Support the Conclusion that an Administrative Expense Claim is not Allowed for Substantial Contribution in a Chapter 7 Case**

The majority of courts to have confronted the question before the court came to the same conclusion, that substantial contribution claims are not permissible in Chapter 7.  *See, e.g., Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994); *In re HealthTrio, Inc.*, 599 B.R. 119, 132 (D. Colo. 2019); *In re Fontainebleau Las Vegas Holdings, LLC*, 574 B.R. 895 (Bankr. S.D. Fla. 2017); *Matter of Memory Lane Assisted Living of Bowdon LLC*, No. 15-10373-WHD, 2017 WL 3475663 (Bankr. N.D. Ga. Aug. 11, 2017); *In re Watson*, 495 B.R. 88 (Bankr. D. Colo. 2013); *In re Lambert*, No. 04-30394-WRS, 2010 WL 3927067 (Bankr. M.D. Ala. Oct. 5, 2010); *In re Courtney*, 359 B.R. 883, 887 n.2 (Bankr. E.D. Tenn. 2007); *In re Hackney*, 351 B.R. 179 (Bankr. N.D. Ala. 2006).

Nevertheless, the Galleria argues that such claims are permissible, and that its claim should be allowed.  In support of its argument, the Galleria relies heavily on the only Circuit-level decision to follow the minority view and "hold that § 503(b)(3)(D) of the Bankruptcy Code does not divest bankruptcy courts of authority to allow reimbursement under § 503(b) of reasonable administrative expenses of creditors whose efforts substantially benefit the bankruptcy estate and its creditors in a Chapter 7 proceeding."  *Connolly*, 802 F.3d at 819 (footnote omitted).

In *Connolly*, two creditors sought allowance of an administrative expense for making a substantial contribution in a Chapter 7 case.  Both the bankruptcy court and district court denied their requests.

9

The *Connolly* panel began its analysis with two principles in mind.  The first was the "overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction[.]" *Id.* at 814, quoting *Bank of Marin v. England*, 385 U.S. 99, 103 (1966).  The court will address the equitable argument in a later section of this opinion.  The second principle was a focus on the language of the statute; "[i]f the language is clear, we need not look further because Congress says in a statute what it means and means in a statute what it says."  *Id.* at 815 (quotation omitted).

The panel then turned its analysis under the second principle to the word "including" in the introductory provision of § 503(b): "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including – …".  Noting that the Bankruptcy Code instructs courts in § 102(3) that the word "including ... is not limiting[,]" the *Connolly* court cited Sixth Circuit precedent in which other panels "held that Congress's failure to expressly designate a given expense as allowable under § 503(b) does not mean that it is excluded."  *Id.* at 816, citing *In re Flo-Lizer, Inc.*, 916 F.2d 363, 365 (6th Cir. 1990) and *In re George Worthington Co.*, 921 F.2d 626, 634 (6th Cir. 1990).

> Rather, it appears that Congress anticipated that bankruptcy courts would encounter a variety of administrative expenses and circumstances warranting reimbursement, which it could then evaluate on a case-by-case basis depending on the specific facts of the case, the benefit conferred upon the bankruptcy estate and its creditors, and whether the expenses at issue were actual, necessary, and reasonable.

*Id.* at 816.  That conclusion, however, relies on a flawed interpretation of "including" in section 503(b).

1. **"Including" in § 503(b) means that the nine categories of administrative expenses in § 503(b)(1) through (b)(9) are not exclusive**

This court agrees that, by using the word "including" in the beginning of § 503(b), Congress signaled that the universe of possible administrative expenses is not limited to the nine

enumerated examples in the statute. *See In re Enloe*, No. 14-36358, 2016 WL 4595921, at \*2

("[T]here is broad consensus that the categories listed under § 503(b) as allowable categories of

administrative expenses are not exhaustive."). *But see In re Lehman Brothers Holdings Inc.*,

508 B.R. 283, 289 (S.D.N.Y. 2014) ("Although § 503 introduces its list with the term

'including,' which implies that the list is not exhaustive or exclusive, the list is meant to be

illustrative of the whole universe of administrative expenses.") (citations omitted).

Administrative expense claims are not limited to the nine categories in § 503(b). The

*Connolly* panel, however, awarded too broad of a reach to the use of "including" in the prefatory

sentence of § 503(b). Unlike *Connolly*, this court concludes that, with two exceptions, each of

the nine categories in § 503(b) is limited to the specific situation it describes.

### 2. Section 503(b)(1)(A) is not limited to the listed examples

The most frequently cited exception is the category of expenses described in §

503(b)(1)(A). This is because § 503(b)(1)(A) *also* contains the word "including."

> **(1)(A)** the actual, necessary costs and expenses of preserving the estate *including--*
>
> > **(i)** wages, salaries, and commissions for services rendered after the commencement of the case; and
> >
> > **(ii)** wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title[.]

11 U.S.C. § 503(b)(1)(A) (emphasis added). In other words, the actual, necessary costs and

expenses of preserving the estate include certain wages and salaries but could extend to a variety

of other items. *See, e.g.*, *Matter of Steenes*, 942 F.3d 834 (7th Cir. 2019) (vehicular fines

11

incurred during the course of a Chapter 13 case); *In re Munce's Superior Petroleum Products, Inc.*, 736 F.3d 567 (1st Cir. 2013) (state court contempt fine assessed against a debtor-in-possession); *In re Marcal Paper Mills, Inc.*, 650 F.3d 311 (3rd Cir. 2011) (the portion of a multiemployer fund's withdrawal liability claim attributed to postpetition time period); *In re Colortex Industries, Inc.*, 19 F.3d 1371, 1377 (11th Cir. 1994) ("[T]he right of an administrative claimant to interest is not specifically provided for in 11 U.S.C. § 503(b)(1).  Rather, if a right to such postpetition interest is to be found, it must be derived from a broad interpretation of that section's use of the term 'including.'").

3. **Each of the other categories in § 503(b) is limited by the words Congress used in that subsection**

In contrast to § 503(b)(1)(A), only one of the other eight categories in § 503(b) contains the word "including."[3]  The other seven do not; they are therefore limited to the situations described.  This is also true for the six subcategories of actual, necessary expenses in § 503(b)(3).  *See In re Mountain Creek Resort, Inc.*, 616 B.R. 45, 54 (Bankr. D.N.J. 2020) ("Congress's use of the term 'including' in subsections (b) and (b)(1) indicates that those specific subsections are not limited. On the other hand, subsection (b)(3)(D) is extremely limited to a list of defined categories.").  *See also In re Nilhan Developers, LLC*, 620 B.R. 385, 409 (Bankr. N.D. Ga. 2020) ("the statute is very specific about the type of entity that may file substantial contribution claims in a chapter 11 case under Section 503(b)(3)(D) and (b)(4)").

---

[3] Section 503(b)(8) allows an administrative expense claim for "the actual, necessary costs and expenses of closing a health care business incurred by a trustee or by a Federal agency (as defined in section 551(1) of title 5) or a department or agency of a State or political subdivision thereof, *including* any cost or expense incurred--
　　(A) in disposing of patient records in accordance with section 351; or
　　(B) in connection with transferring patients from the health care business that is in the process of being closed to another health care business[.]
11 U.S.C. § 503(b)(8) (emphasis added).

Each of those subsections of § 503(b)(3) must be analyzed according to the words Congress chose for the potential allowance of an administrative expense, always keeping in mind that such expenses are construed narrowly. *See Matter of Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984) (citations omitted) ("[B]ecause priority should not be afforded unless it is founded on a clear statutory purpose, if the appellants' claim does not comport with the language and underlying purposes of § 503, their claim must fail. Any preference for claims not intended by Congress to have priority would dilute the value of the intended priority and thus frustrate the intent of Congress."). *See also Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 658 F.2d 1149, 1163 (7th Cir. 1981) ("If one claimant is to be preferred above others, the purpose should appear from the pertinent statutes.")

Finally, if the court read "including" in § 503(b) to allow substantial contributions in Chapter 7 cases as a separate category of administrative expenses, this would render all of § 503(b)(3)(D) superfluous. Why would Congress specifically provide for substantial contribution claims in Chapters 9 and 11 if they could simply be swept into a new category of actual, necessary expenses? "The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *City of Chicago, Illinois v. Fulton*, ___ U.S. ___, 141 S. Ct. 585, 591 (2021) (quotation omitted). *See Connolly*, 802 F.3d at 821 (O'Malley, J., dissenting) ("If substantial contributions in a Chapter 7 proceeding can be considered an administrative expense under the broad 'including' provision of § 503(b), then there is no reason why substantial contributions in Chapter 9 and 11 proceedings could not also have been considered administrative expenses under that same language, making § 503(b)(3)(D) unnecessary.").

13

**C.     There are Other Remedies for Creditors who Provide a Benefit in Chapter 7 Cases**

The conclusion that substantial contribution claims are not allowed as administrative

expenses in Chapter 7 does not mean that courts can never allow a creditor's request for an

administrative expense claim in a Chapter 7 case.  It means only that such a request will not be

allowed for "making a substantial contribution."  But there are other grounds for Chapter 7

creditors to seek allowance of administrative expense claims.

**1.  Creditors can find protection in other sections of the Bankruptcy Code**

For example, in *In re Stainless Sales Corp.*, Atlas Toyota Material Handling, LLC

("Atlas") sought allowance of an administrative expense claim under § 503(b)(3)(E), asserting

that it should be allowed to recover its claim against a custodian as an expense of the estate.  579

B.R. 836 (Bankr. N.D. Ill. 2017).  Although Atlas had a claim against a custodian, and the Code

provides administrative expense status in § 503(b)(3)(E) for the actual, necessary expenses

incurred by a custodian, the court found Atlas's reading of the Code to be strained, leading "to

results inconsistent with the Bankruptcy Code's overall scheme."  *Id.* at 842.

Instead, the *Stainless Sales* court turned to another section of the Code, reasoning that the

custodian had become obligated to Atlas.  11 U.S.C. § 543(c)(1) requires the court to "protect all

entities to which a custodian has become obligated."  The *Stainless Sales* court determined that

the nature of the protection required by § 543 would be the allowance of an administrative

expense claim, *but not under § 503(b)(3)(E)*.

Instead, the *Stainless Sales* court turned back to the prefatory sentence of § 503(b), which

introduces the nine categories of claims that may be allowed as administrative expenses and

contains the word "including."  As discussed above, the use of "including" signals that these nine

14

categories do not constitute the entire universe of administrative expense claims.  While

recognizing that "administrative expenses are to be strictly construed," the court concluded:

> Here there is a compelling justification to afford these parties administrative
> expense reimbursement.  Section 543 requires the court to protect innocent
> parties, such as Atlas, to whom a custodian has become obligated.  They may not
> assert section 503(b)(3)(E) expenses directly, and the custodian who is obligated
> to them may not do so at all.  Allowing the court to fashion a remedy appears to
> be precisely what Congress intended[.]

579 B.R. at 845.  The remedy it fashioned?  Awarding administrative expense status to the claim

arising from the custodian's obligation.

Sometimes creditors (and their attorneys) provide services that are compensable from the

estate.  "There are provisions of § 503 other than subsection (b)(3)(D) that authorize

reimbursement of expenses incurred in connection with a chapter 7 proceeding, and we believe

that post-conversion expenses were intended to be reimbursable under those provisions or not at

all.  *See, e.g.,* §§ 503(b)(3)(B) and (C)."  *Lebron*, 27 F.3d at 945.  Other times those creditors

must bear the cost of services that may also benefit other parties.  But if the creditors can hook

their services onto a different provision of the Bankruptcy Code that provides compensation by

the estate – as in *Stainless Sales* – they can seek administrative expense status for their claims.

   2. **Chapter 7 provides creditors with the unique opportunity for their attorneys to be
      retained directly by the estate**

The *Connolly* panel tried to explain that "[i]t makes good sense that in providing"

examples of common administrative expenses, "Congress would expressly mention Chapters 9

and 11 in the context of creditor activity making a 'substantial contribution,' but not Chapter 7."

802 F.3d at 817.  The reason?  Because "in all but the most atypical Chapter 7 case (such as the

instant case)," *id.*, the U.S. trustee spends time and resources to benefit the estate.

This is wrong.  In fact, the role of the case trustee (not the U.S. Trustee) in Chapter 7 is

one of the strongest reasons why "[i]t makes good sense" that creditors should *not* be allowed to

15

seek administrative expense status for a substantial contribution in a Chapter 7 case. A case trustee, appointed or elected in every single Chapter 7 case, can employ attorneys and other professional persons, even if that attorney also represents a creditor. 11 U.S.C. §§ 327(a), (c). Once the professional persons are employed under § 327, the court can award reasonable compensation under § 330. That award then fits neatly in the category of administrative expenses described in § 503(b)(2): "compensation and reimbursement awarded under section 330(a) of this title[.]"

In this very case, the Trustee argued that the firm he sought to retain "is well suited to the Engagement because G&M has spent well over a year investigating similar issues on behalf of Lincoln ASB Colorado Center, LLC ("LCC"), a creditor of the Debtor and one of the petitioning creditors in the Debtor's bankruptcy case. Accordingly, . . . G&M is well-positioned to represent the estate…". Trustee's Mot. to (A) Employ Goldstein & McClintock LLLP as Special Litigation Counsel and (B) Approve Post-Petition Financing to Fund Litigation Expenses at 1-2.

In a Chapter 9 or 11 case, however, the debtor-in-possession ("DIP") almost always controls the course of the proceedings. Although it has a fiduciary duty to act in the best interest of the estate as a whole, *see LaSalle Nat. Bank v. Perelman*, 82 F. Supp. 2d 279, 292 (D. Del. 2000), it is not always in the DIP's interests to be fully cooperative. The possibility that a creditor might seek allowance of an administrative expense for making a substantial contribution to a case serves as a check on the DIP. By contrast, the case trustee in a Chapter 7 and the standing or appointed trustees in Chapters 12 and 13 can help creditors navigate a bankruptcy case even when the debtor is uncooperative.[4]

---

[4] *Connolly* suggested that "in a properly administered" Chapter 7 case, where the U.S. Trustee (the "UST") "fulfill[s] its duty as the 'bankruptcy watch-dog,'" 802 F.3d at 817, a creditor would have no need to make a substantial contribution. Unfortunately, *Connolly* does not discuss whether the creditors requested that the UST

**D.     A Bankruptcy Court's Equitable Powers are Limited by the Language of the Bankruptcy Code**

Finally, the Galleria appeals to "the vast, equitable powers of a bankruptcy court[.]" Application at 12.  There will always be situations that tempt the court to craft an equitable solution when the statute appears to fall short.  *See In re Harvey*, No. 04-35576PM, 2006 WL 4481990, at \*2 (Bankr. D. Md. Nov. 22, 2006) ("The court's sense of fundamental fairness cries out for their reimbursement. However, § 503(b)(3)(D) is limited to cases under Chapter 9 or 11 of this Title, and this case never was a case under either chapter.").

The Supreme Court tells us, however, "that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).  Bankruptcy courts are not charged with a roving commission to act in the name of equity when presented with a sympathetic set of facts.  *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 24-25 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law. . . but are limited to what the Bankruptcy Code itself provides."); *Sunbeam Products, Inc. v. Chicago Am. Mfg., LLC*, 686 F.3d 372, 376 (7th Cir. 2012) ("Rights depend, however, on what the Code provides rather than on notions of equity.").

The power to correct a statute – if correction is needed – lies with the legislature alone. "[W]e walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle." *Helvering v. Hallock*, 309 U.S. 106, 121 (1940).  One need not sink in that quicksand but can escape alive when Congress provides another path.

---

remove the case trustee, sought assistance from the UST, or chose to pursue removal on their own under section 342.

As an example of finding another path, we need look no further than the overhaul of "critical vendor" payments in the Seventh Circuit. Prior to 2004, Chapter 11 debtor's lawyers would arrive in bankruptcy court on the first day of a case armed with a motion seeking "permission to pay immediately, and in full, the pre-petition claims of all 'critical vendors.'" *In re Kmart Corp.*, 359 F. 3rd 866, 868 (7th Cir. 2004). Bankruptcy courts were asked to approve these motions under 11 U.S.C. § 105(a): "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

The Seventh Circuit put an end to this use of § 105(a) as the sole statutory basis for such relief. "This [section] does not create discretion to set aside the Code's rules about priority and distribution; the power conferred by § 105(a) is one to implement rather than override." *Id.* at 871. That did not mean that no statutory authority existed for Chapter 11 debtors to pay those critical vendors. The *Kmart* decision left open the possibility that future debtors might use 11 U.S.C. § 363(b)(1). "[P]riorities do not change unless a statute supports that step," the panel warned. But "if § 363(b)(1) is such a statute, then there is no insuperable problem." *Id.* at 872.

Similarly, § 503(b)(3)(D) does not support the allowance of an administrative expense priority to the claim of a creditor who made a substantial contribution in a case under Chapter 7. If there is another statute that supports it, however, "then there is no insuperable problem." It is not the court's equitable powers that create the possibility that creditors may obtain allowance of an administrative expense claim in a Chapter 7 case. It is, as with all remedies in a bankruptcy case, the Code that is the ultimate source of relief.

18

## CONCLUSION

For the reasons stated above, the Application is denied to the extent the Galleria requests

relief under §§ 503(b)(3)(D) and (b)(4).


Date:   March 2, 2021

_____

DAVID D. CLEARY
United States Bankruptcy Judge